Grafton,　}
April 1, 1919. }

LUCY A. COBB, *Ex'x,* v. HENRY A. FOLLANSBEE *& a., Ap'ts.*

If the surviving party offers to testify to facts known to the decedent on the ground that injustice would be done by their exclusion, on the issue of injustice the testimony of the survivor is inadmissible; but the fact that the decedent could not have contradicted the survivor's testimony is not required to be shown by evidence other than his.

If the proffered testimony of a surviving party relate to facts to which the decedent could testify, a case of injustice within the meaning of P. S., c. 224, ss. 16, 17 must be shown by other evidence; but, if the evidence relate to a matter unknown to the decedent, that fact alone establishes that injustice would result from its exclusion.

If evidence which has been received is admissible for one purpose but not for another, the party objecting thereto takes nothing by a general exception; he should have asked for an instruction limiting the application of the evidence.

PROBATE APPEAL, from the allowance of a will. The issues of sanity and undue influence were tried by jury, with a verdict for the executrix on the first issue, and for the appellants on the second.

The charge was that the execution of the will was procured by undue influence and fraud upon the part of the executrix and her husband. Subject to exception, evidence was received bearing upon the relation of the parties, including the testatrix, both before and after the execution of the will.

Before the executrix elected to testify, and subject to exception, the appellants were permitted to testify as stated in the opinion. After such election they were permitted to testify generally. Transferred from the January term, 1918, of the superior court by *Marble*, J.

*Raymond U. Smith* and *Scott Sloane* (*Mr. Smith* orally), for the appellee.

*Robert W. Upton* and *John H. Noonan* (*Mr. Upton* orally), for the appellants.

PEASLEE, J. There are in this case a large number of exceptions to the admission of evidence. Many of these relate to testimony tending to show the relations of the various parties, their feelings, purposes and actions. Many others relate to the state of mind of the decedent, to the rationality, or otherwise, of her views, to influence exerted over her, to fraud practised upon her, and to a plan to deceive the heirs as to the extent of her property and the terms of the will she had made. The issues tried being the sanity of the testatrix and fraud or undue influence in procuring the execution of the will, all the matters above enumerated were material and evidence upon them was properly received. In such a trial the field open to investigation is very broad. The argument that much of the evidence was hearsay, is based upon the erroneous idea that many of these questions were not material to the issues tried. So far as the exceptions rest upon this argument they must be overruled. *Gibson* v. *Boston*, 75 N. H. 405, 408. The questions presented were merely of remoteness and were for the trial court.

It is urged that the testimony of the appellants to facts occurring in the lifetime of the decedent should not have been received, because under our decisions the injustice to result from its exclusion must appear from evidence other than the testimony of the surviving party. P. S., c. 224, ss. 16, 17; *Harvey* v. *Hilliard*, 47 N. H. 551; *English* v. *Porter*, 63 N. H. 206. This is the language of the rule laid down in the cases, but its limitations have never been stated.

It is important to note at the outset that from the earliest decision under the statute (*Chandler* v. *Davis*, 47 N. H. 462) down to the latest (*Harriman* v. *Bunker, ante*, 127) the general rule is stated to be that if the proffered testimony related to facts the decedent could testify to, if living, a case of injustice is not made out. If, on the other hand, the evidence relates to a matter unknown to the decedent, that fact alone calls for a finding or ruling that injustice would result from its exclusion. While language is to be found in some of the opinions inconsistent with the latter holding, it will be found that in every case but one such statements were unnecessary to the decisions, and that they were not intended to modify the thoroughly established construction of the statute. *Harvey* v. *Hilliard*, 47 N. H. 551; *True* v. *Shepard*, 51 N. H. 501; *Cochran* v. *Langmaid*, 60 N. H. 571; *English* v. *Porter*, 63 N. H. 206; *Sheehan* v. *Hennessey*, 65 N. H. 101; *Howie* v. *Legro*, 78 N. H. 325. The meaning of the statute has been considered in a large number of reported cases, some forty in all. All but three of these relate to offers by the survivor to testify to facts known to the decedent. It is in this class of cases that the rule here relied upon has been announced and applied. *Howie* v. *Legro, supra*. The earliest case in which it is laid down that the proof of injustice must be by evidence other than the testimony of the survivor was of this class. *Harvey* v. *Hilliard*, 47 N. H. 551. The statement there made relates to such cases only. The general theory being that in such a situation the mouth of the survivor should be closed, an exception thereto must be established without his testimony. The quality of the testimony in mind in such cases is not its showing knowledge or ignorance on the part of the decedent, but its general bearing and efficiency on the issues to be tried. That is, the testimony of the survivor is not to be received to show that with it he has a good case while without it he will be deprived of just relief. It is this proposition to which the rule excluding the testimony of the survivor on the issue of injustice applies. *True* v. *Shepard*, 51 N. H. 501, 504.

It may be remarked in passing that no case has been found where such injustice was considered to have been established. We have no reported case permitting the survivor to testify to facts known to the decedent. In *Hoit* v. *Russell*, 56 N. H. 559, 563, it was said: "If the rule is ever to be relaxed, this seems to be clearly a case where it may safely be done." But the case was disposed of on other grounds.

The rule excluding the survivor's testimony from consideration upon the issue of injustice has no application when the offer is to introduce evidence of facts unknown to the decedent. If the facts

are of the latter class, they are admitted under the general rule established in *Chandler* v. *Davis, supra,* without regard to their importance or insignificance in the case. As to such facts, the survivor is a competent witness. Being a competent witness, his evidence is received so far as it appears to be of the admissible kind. The questions of the importance of his testimony and the hardship of the situation are not involved here, and the rule excluding his testimony on those questions has no application. In such cases those questions are not considered because there is no occasion to look for added proof upon which to base a finding of injustice, for that finding is made upon the offer of the evidence. The contrary holding in *Fosgate* v. *Thompson,* 54 N. H. 455 has not been followed. There is in that case no discussion of the question now presented. It was assumed without argument, or even statement of the proposition, that the rule of proving injustice by other evidence was applicable to an offer to prove facts not known to the decedent.

It is significant that, as before stated, all but three of the reported cases relate to efforts to introduce the testimony of the survivor to facts known to the decedent. From this it is evident that the rule first laid down in *Chandler* v. *Davis,* that in general the survivor should be permitted to testify to facts not known to the decedent, has been followed in practice and acquiesced in by the bar. The claim that the offer of proof is not a sufficient basis for the ruling though supported by *Fosgate* v. *Thompson, supra,* is denied in substance by what was said in *Harrington* v. *Tremblay,* 61 N. H. 413, and by the procedure adopted and approved in *Parsons* v. *Wentworth,* 73 N. H. 122.

An examination of the opinions in the cases where the rule excluding the survivor's testimony on the preliminary issue has been stated confirms this view of its scope. In nearly every one of them the broad general doctrine that the survivor can testify to facts not known to the decedent is stated, and that is assumed to be the conclusion of the whole matter as to such cases. *Howie* v. *Legro,* 78 N. H. 325. Save in *Fosgate* v. *Thompson, supra,* there is no suggestion that on such an offer there is any preliminary issue of fact to be heard and decided. If the rule were otherwise the result would be to exclude the evidence in most cases where it is now admitted.

No case has been cited or found holding that the fact that the decedent could not have contradicted the testimony, if living, must be shown by evidence other than the testimony in question. If expressions in the cases on the question of proving injustice are broad

enough to cover this phase of the matter, it does not appear to have been the intent that they should do so. As before stated, they were designed to apply solely to the case where the survivor seeks to testify to facts known to the decedent.

The practice at trials has been that approved in *Parsons* v. *Wentworth*, 73 N. H. 122. A general ruling is made that the survivor may testify to facts not within the knowledge of the decedent. The witness then proceeds with his testimony, and it is received or excluded according as it appears to be of one class or the other. See *Weston* v. *Elliott*, 72 N. H. 433.

This line of procedure does not open the door for the survivor to fabricate a case. The rule that it must appear that the facts were unknown to the decedent, of necessity limits the evidence very closely. *Bean* v. *Bean*, 71 N. H. 538. This is especially true as to actions on contracts. It is in cases like the present one that there is larger opportunity for the survivor to testify. But the reason for exclusion is by no means as persuasive here as in a true suit between the administrator and a surviving opponent. The charge here is that the beneficiaries under the alleged will procured that document to be executed by fraud. It is a contest between them and the heirs, over a transaction to which they are the real parties. But for the decision in *Welch* v. *Adams*, 63 N. H. 344, impliedly approved by the reënactment of the statute (Laws 1889, *c.* 74; P. S., *c.* 224, *ss.* 16, 17), it might well be doubted whether the statute should be applied in these cases at all.

A part of the testimony to which objection is here made related to conversations with the executrix and her husband, who were charged with procuring the execution of the will by fraud and undue influence. These conversations were alleged to have taken place after the execution of the will, and in part at least tended to show that the executrix and her husband were carrying out their scheme of fraud by deceiving the heirs at law as to the extent of the estate and the provisions of the will. It was clearly admissible under the rule unless it appeared that the decedent might have testified to the same facts, if living. The testimony of Henry Follansbee is not open to objection upon this ground. It was to the effect that the proponent's husband said the talk about the testatrix being possessed of more than $1300 was false, and included an offer by him to show the witness her two bank books containing credits for that amount only. It appeared from the inventory, and was not disputed at the trial, that she had three bank books representing credits of $2600. This evidence had no

tendency to prove or disprove any litigated fact which could have been known to the decedent. Its sole use was to prove that the proponent's husband was actively engaged in an attempt to deceive the heirs. There was no error in admitting this evidence.

The testimony of Charles Follansbee as to his conversation with the executrix is in part of the same general character. It tends to show acts done in the execution of a scheme to defraud. Upon this ground, Charles' testimony that she said the will "won't make no difference with you boys" was admissible. But another part of the same conversation, which was received in evidence, stands somewhat differently. The witness was allowed to state that the executrix told him that she advised the testatrix about the will and "told her that she must make a will" in order to cut off a brother's widow. One probative effect of this evidence was to show that the executrix caused the testatrix to act. This was a fact to which the testatrix, if alive, could testify, and the evidence was therefore inadmissible for this purpose, under the statutory rule excluding the survivor. But the testimony had another bearing upon the case. It tended, like the other evidence which has been considered, to prove the executrix's attempts to deceive the heirs as to what the will was and why it had been made. For these purposes it was admissible. In this view it was of no consequence whether the executrix did or did not so advise the testatrix. The value of the evidence was that it showed the execution of a continuing purpose to deceive and overreach the heirs. If the evidence had not possessed this probative value it would not have been admissible upon any ground, even if there had been no statute excluding it. Not only would it violate the rule as to facts known to the decedent if used for any other purpose, but if she were alive it would be inadmissible in a suit against her. So far as it tended to show influence over her it was merely an admission, and, being the admission of a third party, it was not evidence against her. *Carpenter* v. *Hatch*, 64 N. H. 573. The situation then was this: the evidence was admissible to prove the executrix's representations to the heirs; but it was not admissible to prove the existence of certain facts it admitted, being excluded under the statute and also as not binding on the estate. This presents the ordinary case of evidence admissible for one purpose, but not for another. Applying the well established rule, the objecting party takes nothing by a general exception to such evidence. Had she desired to have the evidence limited, she should have asked to have the jury instructed that the evidence was received merely to show her fraudulent conduct and

not as proof that she procured the will to be made. It may be added that it would appear from the course of the trial that the value of the evidence as tending to show the executrix's participation in making the will was very slight. The whole point appears to have been the one on which the evidence was competent. It was introduced to show the deceitful acts of the executrix.

Other testimony of Charles was received which would have been clearly inadmissible under the statute, but for the fact that before it was offered the executrix elected to testify generally, and did so testify. As up to the time of her election there had been no error in admitting testimony against her, the rule that she could testify and still preserve her objection (*Jordan* v. *Jordan's Estate*, 76 N. H. 20) has no application. She was not compelled to act under an erroneous ruling, and her election to testify removed any objection to the competency of the contestants to thereafter testify.

*Exceptions overruled.*

PLUMMER, J., was absent: the others concurred.