Strafford, }
March 1, 1938. }

LORENZO D. H. FORD, *Ap't*

*v.*

KARI L. FORD, *Ap'ee*

*Thorp & Branch (Mr. Branch* orally), for the appellant.

*Hughes & Burns, Charles F. Hartnett* and *Dwight Hall (Mr. Burns* orally), for the appellee.

MARBLE, J.  The testator, Charles Baker Ford (referred to in the testimony as Baker Ford), was the son of Hollis and Alice Ford of Dover.  His mother died in January, 1931, when he was nineteen years old.  After his mother's death he lived on the home farm with his father.  The appellee came to the farm for a visit in August, 1931, and remained "visiting there" (to quote her own testimony) until she married Hollis Ford on February 25, 1932.

She herself characterized the testator as a supersensitive boy.  A witness, called in her behalf, stated on cross-examination that "the poor boy had never decided anything for himself," that he had "never been allowed to have" any initiative.  Another witness, who had known him ever since he was born, expressed the opinion that "he was a boy that was mentally deficient."  A clergyman, whose church the testator attended "rather frequently" (called as a witness by the appellee), agreed that the testator was "different at least" and thought that "his deficiency" consisted in the fact that "he was so very easily influenced."  One of the testator's former schoolmates stated that he could "be led very easily to do practically anything anyone wanted him to do."

There was evidence tending to prove that he disliked his stepmother and was afraid of her.  The last-mentioned witness said: " . . . before she came there we used to have good times together, afterwards it was all stopped. . . . He was extremely nervous and jumpy and the minute she spoke he would jump to whatever she wanted him to do."  The witness added that the testator's attitude toward his stepmother was one of fear.

Nancy Ford, the wife of the appellant, testified: "When she would tell Baker to do things if he didn't move instantly she'd tell him that

he was crazy and scream at him and order him to do them and do them right away . . . . Hollis asked her to be patient with him. He told her he never had to think for himself, that he always had been told what to do and when to do it and to be patient with him."

Hollis Ford died on December 13, 1933. On the following afternoon Charles Baker Ford went to an attorney's office in Dover and made the will in question, leaving his entire estate to his stepmother. According to her own testimony he delivered the will into her hands that evening. On the evidence it could be found that, although she was not present in the attorney's office at the time the will was made, she was alone with the testator in Dover shortly before that time.

The witness Nancy Ford described the events of the afternoon as follows: "We went to the undertaker's to pick out the casket . . . . My husband and Kari and Baker and I . . . . We went from the Baker home to the undertaker's and all four of us went in to select a casket . . . . We four came out of the building and as we started to the car Kari said, 'We will be back in just a minute' . . . . Baker went with her and my husband and I sat down in the car." The witness was unable to say how long they were gone, but later in the afternoon "They both came back to the car and [Kari] said, 'Now we will go and see about the flowers.' " The witness further testified that after purchasing flowers they returned to the farm and that her husband was with Baker "every minute all the rest of that time he was in such a condition."

A month later the testator again went alone to a lawyer's office and on this occasion signed a petition for the appointment of that lawyer as conservator of his property. The petition contained the requisite representations as to unfitness for the management of the petitioner's affairs by reason of mental or physical disability. P. L., c. 291, s. 16. On February 2, 1934, the appellee wrote a letter to the appellant and his wife in which she made the following statement: "Baker as you know has never had one bit of business experience and everything any one suggested to him he was eager to do . . . . Every one was out to 'do' him and finally I had a conservator appointed. . . . One thing now is sure and that is if he loses all he has it will be done legally at least."

There was evidence that from the time the testator applied for the appointment of a conservator until his death, which occurred on May 22, 1934, he feared that the appellee would have him committed to the state hospital for the insane. He talked with some of his neighbors about his fears and asked them, in the event of his

confinement in that institution, to intercede in his behalf.

On the day of his death he told one of them that he "couldn't stand any longer the way things were going at home," that he had tried to see "if there couldn't be some change made" in regard to the conservatorship, that the conservator had thereupon notified his stepmother and that she had become very angry and "talked terrible" to him. He wrote a note to this neighbor's son repeating the statement that he couldn't stand the way things were going any longer and then committed suicide.

The evidence is too voluminous to be recounted in greater detail, but enough has been stated to show that the verdict of the jury was entirely warranted.

The fact that the appellee was not present at the execution of the will does not conclusively establish lack of coercion on her part. *Gaffney* v. *Coffey*, 81 N. H. 300, 304. The jury were entitled to infer from the testimony relating to her conduct on the afternoon of December 14 that the testator went to the lawyer's office under her guidance during their absence from the appellant and his wife. The will is a concise one, comprising only a few simple sentences, and was typed in a very short time. The testator's fear of the appellee, his excessive grief because of his father's death (of which there is much evidence), the choosing of that particular time to make the will, and the delivery of the will to the appellee, all point to the appellee's influence as the moving force of the transaction. As evidencing her ability to influence the testator, the jury were entitled to consider the circumstances surrounding the application for the appointment of the conservator, the fact that the appellee was not present and her subsequent statement that she had had the conservator appointed.

It could be found on all the evidence that the testator, induced by fear of the appellee, made the will in her favor because he did not dare to do otherwise. A will so induced is void. *Gaffney* v. *Coffey*, *supra*, and cases cited. The motions to withdraw the issue of undue influence from the jury, to dismiss the appeal, and to affirm the decree of the Probate Court were properly denied.

A witness testified subject to exception that before the death of Hollis Ford the appellee said that Hollis "just had a life interest in the estate and that should Hollis die she would be left penniless so far as the house was concerned." This evidence was offered to show motive and not to prove title. As thus limited it was clearly admissible.

The appellee excepted to the introduction of the testator's petition for the appointment of a conservator. This petition was signed by the testator, and the only reason now suggested for its exclusion is the claim that the appellee's alleged part in the proceedings was never established, since the letter of February 2 "cannot be attributed to her." This suggestion is entirely without merit. The appellee, though evasive, did not deny the authorship of the letter, and the testimony as to its receipt was definite. Furthermore, both the letter and its postmarked envelope were admitted without objection.

The attorney who acted as the testator's conservator testified, subject to exception, that before the date of the petition he had met and talked with the appellee. This tended to show the relation between them and the evidence was admitted for that purpose. It did not become inadmissible merely because the witness later testified that the appellee never asked him to act as conservator.

The appellee excepted to the latitude allowed appellant's counsel in the examination of one of his own witnesses (*State* v. *Roach*, 82 N. H. 189, 190) and to the exclusion of a question put to a witness which the witness had already answered (*Harvey* v. *Provandie*, 83 N. H. 236, 243; *Wright* v. *Woodward*, 79 N. H. 474, 477); various exceptions were taken to testimony relating to statements of the testator and the appellee made both before and after the execution of the will and tending to show "their feelings, purposes and actions" (*Cobb* v. *Follansbee*, 79 N. H. 205, 206); other exceptions were taken to rulings of the court permitting witnesses to state conclusions they had drawn from facts and circumstances (*Christie* v. *Company*, 87 N. H. 236, 239),—all of which merely presented questions for the exercise of the trial court's discretion.

The appellee excepted to the court's instruction that the ultimate burden of proving that the will was the free and voluntary act of the testator rested on the appellee. The exception is overruled. The entire instructions on the subject were correct and in strict accordance with the rule stated in *Gaffney* v. *Coffey*, 81 N. H. 300, 306, 307.

The appellee also excepted "to the court's charge permitting the jury to consider other evidence in addition to that of undue influence." The contention now made is that since the issue of testamentary capacity was not raised, no consideration cou d be given to the evidence relating to the testator's mental condition. Such is not the law. In the case of *Patten* v. *Cilley*, 67 N. H. 520, 528, where the

only issue submitted was that of undue influence, the quality of the testatrix's mind was held to be a material fact to which witnesses found by the court to be competent to form valuable opinions on the subject might testify. See, also, *Harvey* v. *Provandie*, 83 N. H. 236, 240; *James* v. *Staples*, 87 N. H. 49, 53.

*Exceptions overruled: will disallowed.*

BRANCH, J., did not sit: the others concurred.