## JOHN O'HALLORAN v. CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY.[1]

October 12, 1923.

No. 23,565.

**Judgment notwithstanding verdict properly denied when evidence did not justify directed verdict.**

In this, an action to recover damages for personal injuries, it is *held* that the evidence justified the refusal to direct a verdict in favor of the defendant, at the close of the testimony, and therefore the motion for judgment notwithstanding the verdict was properly denied.

Action in the district court for Douglas county to recover $186,-800 for injuries received because of a defective railroad crossing. The case was tried before Parsons, J., who when plaintiff rested and at the close of the testimony denied defendant's motion for a directed verdict, and a jury which returned a verdict for $35,000. The jury answered in the affirmative the question: "Was the defendant negligent with respect to the planks at the cemetery crossing?" and in the negative the question: "Was the defendant negligent with respect to the operation of the second hand-car?" Defendant's motion for judgment notwithstanding the verdict was denied. From the judgment entered pursuant to the verdict, defendant appealed. Affirmed.

*Denegre, McDermott, Stearns & Weeks,* for appellant.

*Tom Davis, Ernest A. Michel* and *R. M. Haines,* for respondent.

[1]Reported in 195 N. W. 144.

QUINN, J.

Action to recover damages for personal injuries alleged to have been caused through the negligence of the defendant in failing to keep and maintain one of its crossings over its main track at Waco, Nebraska, in a safe condition for its employes to pass over on hand-cars in the usual course of their employment. The action was commenced in Minnesota and tried in Douglas county, where a verdict was returned in favor of the plaintiff for $35,000. At the close of the testimony the defendant asked for a directed verdict, which was refused. Upon the incoming of the verdict a motion was made for judgment notwithstanding the verdict, which was denied. From a judgment entered upon the verdict this appeal was taken.

In the complaint it is charged that the defendant was negligent in allowing the plank on the crossing to become warped and out of condition so as to extend above the top of the rails, thereby rendering the crossing unsafe and dangerous for employes to ride over on hand-cars; also in running another hand-car upon which members of plaintiff's crew were riding in close proximity to the one on which plaintiff was riding at a dangerous rate of speed and without proper brakes thereon. Defendant's answer was a general denial, and alleged assumption of risk and contributory negligence.

Plaintiff was 52 years of age at the time of his injury. He had been engaged a greater portion of time for over 25 years as a railroad track-man and was experienced in that line of work. He began work for the defendant as foreman of a steel gang in January, 1920. His duties were to lay steel and do all kinds of work incidental thereto. His crew consisted of about 25 men who ate and slept in bunk cars stationed east of the crossing. On the day of the accident and for some time prior thereto plaintiff, with his crew, was laying steel west of the crossing and they went to and from their work on hand-cars and in so doing passed over the crossing in question 4 times each day.

This crossing was repaired by the section foreman and his crew early in April, 1920, after all frost had gone out of the ground, by taking the planks up, cleaning underneath, turning them over and spiking them down in place. Several witnesses testified that, after

the crossing was so repaired, none of the planks thereon extended above the level of the top of the rails. Shortly thereafter, the exact date of which does not appear, but prior to June 5, the plaintiff, with his crew, laid new steel over the crossing. In so doing he first took up the planks nearest each rail on the inside, then removed the old rails, placed and spiked the new rails, and filled the space made by the removal of the planks, with cinders so that teams might pass over. The 3 planks in the center, between the rails, were not removed. It was the north one of these three planks with which plaintiff claims his foot came in contact, at the time he was thrown from the hand-car and injured.

It is contended on behalf of the plaintiff, and he testified in effect that, on the second day of July, he was about 4 miles west of the crossing with his crew, laying steel; that between 11 and 12 o'clock, he and his men started east toward the crossing for dinner on 3 hand-cars and that:

"I was sitting on the front end of the hand-car and my left foot on the car handle of the car and the other foot hanging down, sitting on some clothes, and some way or other the car gave a lurch and knocked my foot off the handle and that went down and caught in the plank—my left foot went down and caught in the plank and throwed me under the hand-car and the hand-car went over me and the other hand-car behind it ran into this hand-car—ran into this hand-car and doubled me up and broke my back.

"Q.  Now, Mr. O'Halloran, after you fell from it you say the first hand-car went over you?

"A.  Yes, sir, to the best of my recollection it went over me.

"Q.  Did it go over your entire body as you remember it, or part of it?

"A.  I think so.

"Q.  About how long would you say after the first hand-car—after you fell off the first hand-car and it went over you before the second hand-car went over you?

"A.  I could not tell exactly.  It was not very long; it seemed like very close when I heard the crash into the other car."

This action was brought under the Federal Employers Liability act. The parties were engaged in interstate commerce. Three disinterested witnesses were called by plaintiff, and they testified that the planks on the crossing at the time of the accident had become warped and extended from $1\frac{1}{2}$ to $2\frac{1}{2}$ inches above the face of the rails. Upon the other hand, several witnesses were called by the defendant who testified to the opposite. It is clear that the record presented a question for the jury as to defendant's negligence in maintaining the crossing in proper condition. The far more serious question is, should the assumption of risk have been submitted to the jury or should it have been determined by the court? It appears conclusively that the crossing was put in proper condition by the section crew early in April, and that shortly thereafter the plaintiff and his crew laid new rails over the same. It does not appear satisfactorily, however, that the planks, at that time, were warped and out of place. From June 21 to the time of the accident, plaintiff passed over the crossing 4 times each day in going to and returning from his labors. It was not his duty to look and ascertain whether the planks left in the crossing, at the time the new rails were laid, were warped and out of place. The evidence made a question for the jury, as to whether plaintiff knew or should have known of the defective and dangerous condition of the crossing and thereafter assumed the risk incident to his riding over the same on a hand-car in the manner in which he says he did. This question was clearly and correctly submitted to the jury and its findings thereon are final. Under the proofs the question of contributory negligence was for the jury.

The appeal is from an order denying appellant's motion for judgment notwithstanding the verdict. Such motion was made under section 7998, G. S. 1913. This statute applies only where there is a denial of a motion made at the close of the testimony for a directed verdict. The denial of such a motion furnishes the basis for a motion for judgment notwithstanding the verdict. Where the appeal is from an order denying such a motion, it brings to this court only such proceedings as were had up to the time of the order denying the motion for a directed verdict. Neither the charge, nor special

findings of the jury, can be here considered on such an appeal. However, the whole of the evidence, as it stood at the time of the request for a directed verdict, should be considered, and, if found sufficient to warrant a submission of the issues to the jury, the order appealed from will be sustained. The motion for judgment notwithstanding the verdict, presents a question of law, to be determined on the whole evidence as it stood at the close of the testimony—the real question for determination being—should a verdict have been directed at the close of the testimony? In passing upon that motion, the court was bound to consider all of the testimony, including that bearing upon the comparative negligence of the plaintiff and defendant, and with regard to the operation of the second hand-car, regardless of the special findings of the jury.

Affirmed.