Merrimack, }
May 4, 1937. }

RUBY H. CARBONE, *Adm'x v.* BOSTON AND MAINE RAILROAD.

ALICE DION, *Adm'x v.* SAME.

*Robert W. Upton* and *Laurence I. Duncan* (*Mr. Duncan* orally), for the plaintiff Carbone.

*Murchie, Murchie & Blandin* (*Mr. Alexander Murchie* orally), for the plaintiff Dion.

*Demond, Woodworth, Sulloway, Piper & Jones* (*Mr. Jones* orally), for the defendant.

BRANCH, J.   The defendant seasonably moved for nonsuits and directed verdicts in both cases.   These motions were denied and the defendant excepted.   In support of these exceptions it is now argued:

1. That "there was no evidence from which the jury could reasonably have found that the defendant was negligent"; 2. That the "plaintiff Dion was negligent as a matter of law." Both of these arguments are without merit.

The accident happened May 25, 1934, at about half past nine in the evening, upon a grade crossing in the city of Concord, where a highway known as Sewall's Falls Road crosses the defendant's tracks. The decedents were killed by a collision between an automobile in which they were riding and one of the defendant's trains. The automobile was owned and driven by the decedent Dion, and the decedent Carbone was a passenger therein.

Under ordinary conditions Sewall's Falls Road is a country highway carrying a light traffic. For three weeks before the accident, however, all the traffic of the Daniel Webster Highway, one of the main trunk lines of the State, had been diverted over this road on account of construction work. As a result, the travel became very heavy. According to one witness who lived nearby, "there were eight to ten times as much traffic as there was previous," and the same witness estimated that, on an average, three or four cars a minute passed over this road.

The crossing was without protection except for the usual warning sign some fifteen feet in height, located at the edge of the highway about eighteen feet east of the track, and a disk sign, indicating the proximity of a railroad, on the south side of the highway about three hundred and twenty-seven feet west of the crossing. The view of the railroad track available to a traveler approaching from the west was obstructed by trees and a stone wall up to a point within one hundred and eighty-six feet of the crossing. At this point it was possible to see seven hundred feet up the track, and the extent of the view increased as the distance from the crossing decreased. The weather, at the time of the accident, was rainy, the atmospheric conditions were described as misty and foggy, and it might be found that the visibility was poor.

The automobile in question approached the crossing from the west and was following a motor truck operated by one Connolly, who was familiar with the road and with the crossing. He testified that he approached the crossing at a speed of fifteen miles an hour or less, slowing down to seven miles an hour as he reached the crossing. As Connolly approached the crossing, he did not hear or see the defendant's train, which was approaching from the north, until he was on the crossing. At that time he observed the headlight of the locomo-

tive which he said "looked like a yellow globe," and as the rear wheels of the truck went over the crossing he heard a short blast of a whistle. Another witness, who was riding upon the truck, testified that he heard no other warning of the approaching train. It might be found that the automobile in which the decedents were riding followed the truck at about the same speed and was struck upon the crossing very soon after the truck had passed.

According to the testimony of the defendant's employees, the train was traveling at a speed of forty-five miles per hour, which was the maximum speed permitted at this point by the defendant's rules. There was also testimony, perhaps of doubtful weight, that the speed of the train was fifty-five miles per hour. There had been no change in the rules or orders governing the speed of trains at the Sewall's Falls crossing after the detour had been established and the automobile traffic routed over that road.

The trial court instructed the jury, subject to the plaintiffs' exception, that there was no evidence from which it could be found that the defendant failed to give the statutory warning signals by whistle and bell as the train approached the crossing. If it be assumed that this ruling was correct, we think it was nevertheless plain that, under the circumstances set forth above, a question as to the need for special protection at this crossing was presented for the determination of the jury. "The need of such protection at a given crossing depends upon the special features and facts connected with it. The amount and character of travel, the extent of train movements over it, the operation, control and speed of the trains, the character of the highway . . . and any other unusual or special features of pertinent bearing, all enter into the problem. In other words, reasonable need of special protection is to be determined by the special and unusual dangers of the crossing considered." *Stocker* v. *Railroad*, 83 N. H. 401, 405.

The defendant was clearly chargeable with knowledge of the increase in traffic over this crossing. The fact that this condition had existed for three weeks before the accident would, in itself, be sufficient to justify such an inference. There was further evidence, however, that at least two members of the train crew, the fireman and a brakeman, had observed the change, and their knowledge was the knowledge of the defendant. *Smith* v. *Railroad*, 87 N. H. 246, 256; *Lovett* v. *Railway*, 85 N. H. 345, 349. If the defendant saw fit to run its trains over a crossing carrying the heavy traffic above described, in the night, and without regard to weather conditions, at a speed of

forty-five miles per hour, it was for the jury to say whether ordinary prudence would not require provision for a more effective warning of the approach of trains than was furnished by the whistle and bell of the locomotive. *Stocker* v. *Railroad, supra; Jones* v. *Railroad,* 83 N. H. 73; *Collins* v. *Hustis,* 79 N. H. 446.

This conclusion incidentally disposes of the defendant's exceptions to the denial of its requests for instructions numbered 26-31 inclusive, all of which had reference to the issue of additional crossing protection.

The defendant's contention that the decedent Dion was guilty of contributory negligence as a matter of law, is equally untenable. The burden of proof upon this issue rested upon the defendant. P. L., c. 328, s. 13. Since all the occupants of the car were killed in the accident, no witness was able to testify whether he looked or listened before driving onto the crossing, but from the testimony as to his habitual care when approaching railroad tracks, it might be found that he did both. *Jones* v. *Railroad, supra,* 78. The most that can be said in favor of the defendant's position is that Dion apparently drove onto the crossing without regard to warning signals and without observing the approach of the train. The evidence of the occupants of the truck, which barely escaped disaster a few seconds earlier, that they heard no warning signals, would justify a conclusion that the atmospheric and other physical conditions at the time of the accident were unfavorable to the transmission of these sounds. If the whistle was heard, it might readily have been inferred by a traveler unfamiliar with the road that the train was traveling upon another track of the defendant which he had crossed shortly before on the other side of the river. His failure to see the approaching train in time to avoid the accident may well have been attributable to the poor conditions of visibility above described. The fact that he was following a truck which may have occupied his attention was also a significant factor to be considered in appraising his conduct. *Wentworth* v. *Railroad,* 86 N. H. 251, 254.

The verdict must be set aside, however, because of an unsupported and prejudicial charge that the defendant had undertaken to prevent the production of material witnesses, made by plaintiffs' counsel during the trial. Circumstances under which this charge was made were as follows.

The first witness called by the plaintiffs, on the second day of the trial was Kenneth W. Qua, the defendant's claim agent, who made an investigation of the accident in question. It immediately ap-

peared that he had no first-hand information about the matter. He was then asked if he knew where the engineer and fireman of the train then were, but disclaimed all knowledge as to their whereabouts. He was then asked when he had last seen the fireman. To this question defendant's counsel objected upon the ground that "this line of questioning is prejudicial." The court overruled the objection, subject to the defendant's exception and stated the ground for its ruling as follows: "*Court:* I suppose counsel are looking for information on which they can summons a witness if they want to. I suppose that is the purpose of it. That is all right." No comment upon the court's ruling was made by counsel for either plaintiff, and, ostensibly for this purpose, the witness was examined at length in regard to his knowledge of the movements of the engine-men by counsel for both plaintiffs. During his examination by Mr. Murchie, however, it clearly appeared that the purpose suggested by the court was not the real purpose of the examination, as appears by the following excerpt from the record: "Q. [by Mr. Murchie] Did you make any request of Mr. Guy to be present at this trial? *Mr. Jones:* Same objection. *Court:* That isn't the question, is it? I don't see how that comes to anything. *Mr. Murchie:* All right, I will waive it if there is objection. Q. Now do you know—this is whether you know —do you know whether Mr. Guy had been ordered to the State of Massachusetts, out of this jurisdiction during the course of this trial? *Mr. Jones:* Just a moment—Q. That can be answered yes or no. *Mr. Jones:* I object to that as absolutely prejudicial to the defendant. The defense hasn't even opened their case yet. *Mr. Murchie:* It isn't prejudicial if it is the truth. *Mr. Jones:* I object to that statement as prejudicial and irrelevant to the case. *Court:* I think it is competent. You may answer, Mr. Qua. A. No. *Mr. Jones:* I would like an exception. *Court:* Certainly. Q. You don't know either way? A. No, sir."

No information as to the whereabouts of the engine-men having been obtained from this witness, the defendant, at the close of his direct examination, made the following motion: "*Mr. Jones:* I move all this testimony be stricken out. The plaintiffs have not laid any foundation for any such evidence and the evidence is prejudicial and inadmissible. *Mr. Murchie:* We will be in a position to establish before the day is over that we have tried to subpoena Mr. Guy at his home in Woodsville during the past week and the sheriff has not been able to find him at his home in Woodsville. *Court:* It is in the case, it may stand. *Mr. Jones:* My exception is saved? *Court:* Yes."

Subsequently the defendant's master mechanic was called as a witness by the plaintiffs and, subject to the defendant's exception, examined as to the present employment of the engineer. During the course of his testimony, the following proceedings took place: "Q. [by Mr. Murchie] Within a week or thereabouts has Mr. Guy applied to you or your office for a lay-off? *Mr. Jones:* Subject to the same objection and exception. *Court:* All right. Q. You may answer. A. Not that I have any personal record of. Q. Would there be a record in your office if he is not working? A. Yes, sir."

Roscoe S. Reinhart, a deputy sheriff, called as a witness by the plaintiffs, testified that on Thursday before the Monday on which the trial commenced, plaintiffs' counsel placed in his hands a subpoena for the engineer, requiring him to appear and give his deposition on the following Saturday morning; that between that time and Tuesday, the day upon which he testified, he had gone to Mr. Guy's house four times but had been unable to find him. He also testified that upon Tuesday morning he had a subpoena for the fireman to appear as a witness at the trial; that he went to the latter's house about 8:30 in the morning but was unable to find him.

Upon Wednesday morning the engineer and fireman were produced as witnesses by the defendant and the following statements were made by counsel: "*Mr. Jones:* If the Court please, I have here in court this morning two members of the train crew, Mr. Guy, the engineer, and Mr. Webb, the fireman, whom we found out yesterday, when the witness was on the stand, that the sheriff had been trying to reach by subpoena, and they are here present in Court this morning, and I would like to ask counsel for the plaintiff to agree, if not I will prove it, that counsel for the plaintiff never asked us to produce any members of the train crew here at the trial. *Mr. Murchie:* I can speak for myself. We tried to summons them, that is all. *Mr. Jones:* Counsel for the plaintiff never asked counsel for the defendant to produce any of the train men. *Mr. Murchie:* Not at least as far as I am concerned. I relied on their being summonsed."

Thereafter the engineer, having been called to the stand by the plaintiff, was examined as follows: "Q. [by Mr. Upton] You came into Concord today? A. Yes, sir. Q. From where? A. From Boston. Q. How long have you been stopping in Boston? *Mr. Jones:* Just a moment, if the Court please, I object to that. *Court:* I don't see as it has anything to do with the case, Mr. Upton. *Mr. Upton:* Under the circumstances, we have been trying to locate this witness. *Court:* He is here. *Mr. Upton:* That sufficient? *Court:* It seems to

me that is the most important thing if you want him. *Mr. Upton:* I put him on the stand. *Court:* Why don't you ask him about the accident then if you want to know. *Mr. Upton:* May I have an exception to the exclusion of the evidence? *Court:* Yes. Q. When did you get word to come here? A. Last night."

The fact that the plaintiffs' counsel made the charge that "Mr. Guy had been ordered to the State of Massachusetts out of this jurisdiction during the course of this trial" in the form of a question did not save it from the operation of the rule that a statement by counsel of material facts of which there is no evidence, is ordinarily reversible error, unless there is a finding that it did not render the trial unfair which the plaintiffs have not sought to obtain. "In *Pearson* v. *Beef Co.* 69 N. H. 584, *Baldwin* v. *Railway*, 64 N. H. 596, and *Demars* v. *Glen Mfg. Co.*, 67 N. H. 404, the fact that the incompetent statements were in the form of questions to witnesses, which the witnesses were not permitted to answer, did not alter the rule, though in the latter case a finding that the verdict was not affected thereby sufficed to prevent a new trial." *Story* v. *Railroad*, 70 N. H. 364, 374.

The attempts of counsel to sustain this charge by the evidence above set forth resulted in complete failure. Clearly the fact that a deputy sheriff, within a space of six days, made four unsuccessful attempts to find a locomotive engineer at his house, furnishes no rational basis for a conclusion that his employer had ordered him out of the jurisdiction to escape service of process. The prejudicial nature of such a charge is too obvious to require comment. Counsel acted at their peril in making the charge, and having failed to sustain their position by relevant evidence, cannot escape the usual consequences.

Since some of the questions raised by the defendant's remaining exceptions may arise at another trial, they have been considered.

The exception to the order that these two cases be tried together, presents no substantial question of law. The discretionary authority of the court to make such an order is clear. *Kenalos* v. *Company*, 81 N. H. 426; *Genest* v. *Company*, 75 N. H. 365. It was for the Presiding Justice to decide whether justice and convenience would be served by this procedure. His decision upon this point, sustained by obvious considerations of convenience, is not reviewable here.

The subsidiary rulings that each plaintiff should be permitted to make an opening statement, examine witnesses, and make an argument to the jury all stood upon the same basis as the order for joint

trial, and although the efforts of the court to prevent double examination of witnesses was not wholly successful, we cannot say as a matter of law that the trial was thereby rendered unfair.

The defendant excepted to the testimony of the plaintiffs' expert as to the distances in which the train could be stopped at varying speeds less than forty-five miles per hour upon the ground that it was not relevant to any issue in the case. These exceptions must be overruled. The plaintiffs claimed throughout the trial that the speed of the train was excessive under the circumstances and that rules or orders requiring reduced speed at this crossing should have been adopted by the defendant. As tending to establish the soundness of this claim it was proper to show the probable efficacy of such regulations by proving that an engineer has a greater control over his train at low speeds than at higher ones. Furthermore, the plaintiffs consistently claimed throughout the trial that the engineer, by prompt action, might have averted the accident after he should have discovered the peril of the decedents if the speed of the train had not been so great. The evidence was clearly material upon this issue.

After the testimony of the expert had been concluded, the defendant moved that it all be stricken from the record, upon the ground that his admissions upon cross-examination demonstrated his lack of an expert's qualifications. This motion was properly denied. The witness was an engineer of many years' experience. From this experience it was reasonable to conclude that he knew more about the action of air brakes and their effect in stopping trains than the jury did. It might, therefore, be found that his knowledge would probably aid them in the search for truth. This was the test of its admissibility. *Paquette* v. *Company*, 79 N. H. 288, 290; *State* v. *Killeen*, 79 N. H. 201, 202. Additional qualification as an expert was found in the fact that the witness had supplemented his experience by reading standard text books which gave the result of actual tests in stopping trains. The fact that he took his figures as to speed and distances from these books and would have been unable to make the necessary calculations by the use of scientific formulae without the books, did not render his testimony inadmissible. *Dole* v. *Johnson*, 50 N. H. 452, 459; *State* v. *Wood*, 53 N. H. 484. Testimony based upon statistics found in standard authorities is admissible. *Piper* v. *Railroad*, 75 N. H. 228, 233.

The defendant requested the court to charge the jury that it "cannot be found liable in this case under the last clear chance doctrine." Such an instruction would have been meaningless to the jury without

great elaboration and since the issue of liability under that doctrine was not submitted to them, the defendant cannot complain of the denial of this request.

None of the other questions argued by the defendant seem likely to arise at another trial and no opinion regarding them is, therefore, expressed.

*New trial.*

All concurred.