# E. P. DREYER v. OTTER TAIL POWER COMPANY.[1]

No. 31,960.

May 12, 1939.

[1]Reported in 285 N. W. 707, 287 N. W. 13.

*Field & Field,* for appellant.
*Dell & Rosengren,* for respondent.

STONE, JUSTICE.

Action for personal injury and property damage suffered by plaintiff in an automobile collision. The verdict was for plaintiff. Defendant's motion for judgment notwithstanding or a new trial denied, it appeals.

The place was the right-angle intersection of two graveled and well traveled prairie highways. Defendant's truck was going north. Plaintiff's sedan, coming from the east, ran into it head on, striking the right rear wheel of the truck. The traveled portion of each road was approximately 22 feet in width. There were no "stop" or other highway signs. Flanking the south side of the east-and-west highway to plaintiff's left as he approached the intersection was a row of trees, between which there was a growth of underbrush and weeds. The most westerly of the trees was far enough from both roads so that an attentive glance by plaintiff before reaching the crossroad, as he got to or passed that tree on his way west, would have shown him the crossroad for several hundred feet to his left. Plaintiff did not know that he was about to enter the intersection at his admitted speed of 35 miles per hour. He did not realize that there was any crossing there until within eight or ten feet of it. He was not aware of the truck until it "flashed" in front of him.

The argument is that a jury could well have concluded that due care did not require him to know that he was about to go over the crossing. We pass the circumstance that he had traveled easterly over the same crossing within the preceding two hours, and confine ourselves to the prospect ahead as he approached the north-and-south road.

On its far side was a group of rural mailboxes, which often, if not always, indicate a traveled way of some kind coming in close by.

Plaintiff did not see them. On his right, he could not have failed to observe, had he been even ordinarily attentive, two fence corners, between which the crossroad proceeded northerly. The road on which he was driving had flanking ditches of at least average depth and width. Before him was the prominent square turn of the one on his right where it joined the east ditch of the north-and-south road. Finally, the road itself, with its graveled surface, was there to tell him emphatically of its presence and the attendant danger from traffic thereon.

■ Under such circumstances, it is futile to argue that the driver of an automobile may absolve himself of all obligation to be aware of the intersection and its attendant danger. Diligent counsel on both sides assure us that their search has discovered no case holding one way or the other on this point. It is significant, in view of the enormous bulk of litigation involving automobile collisions at intersections, that no advocate heretofore has had sufficient confidence in the ductility of judicial minds to attempt the claim here made for plaintiff.

Unhesitatingly we hold that such heedless action, under the stated conditions, is negligence as matter of law. The reason, briefly put, is simply this. While an automobile is not technically a dangerous instrumentality, it yet has such propensities for injury that the care required of the operator is always commensurate thereto. That duty attends him always on the highway. It has no more constant exaction than that of attention to what lies ahead. One of the first objectives of such attention is necessarily to discover in due time the presence of a side or intersecting highway. That an autoist has no knowledge of a crossing does not "justify him in driving as if there were no intersecting roads." Dansky v. Kotimaki, 125 Me. 72, 75, 130 A. 871, 873.

■ The argument for plaintiff, attempting to excuse him by supposed "distracting circumstances," is equally baseless. There can be no distracting circumstances unless there is also another hazard from which to divert attention. Knowing nothing of the crossroad or defendant's oncoming truck, plaintiff's attention simply could not

have been drawn from them. To argue otherwise is like trying to unharness a horse which stands bare of harness.

We are not now considering the rule governing appraisal of conduct in an emergency. In an emergency, not caused by his own negligence, and in an endeavor to avoid a known danger, one may injure a person whose presence was theretofore unknown. Robb v. Pike, 119 Fla. 833, 161 So. 732. Liability will be avoided if the circumstances of emergency allow the conduct, which is proximate cause of the hurt, to be considered an exercise of due care. But that is not a case, properly speaking, of "distracting circumstances." It is rather one in the different legal category of action in emergency. Frequently the same facts will be susceptible to the application of both rules. But where, as here, but one danger threatens the party whose conduct is in question, and that is the only one which, with his own action or inaction, combines to cause injury, there is nothing which can properly be called a distracting circumstance. Distraction is equivalent to diverting or turning aside of attention, a process which simply cannot take place until there is first something from which attention may be turned away.

One of the circumstances stressed for plaintiff as distracting is the row of trees on his left as he came to the crossroad. In view of what has just been said, it needs no further comment. Another excuse attempted for plaintiff is that there was enough of a drizzle so that his automatic windshield wipers were in operation. Such usual and necessary operation of a mechanism chosen and used by a litigant cannot relieve him from the duty of care which the circumstances otherwise put upon him. If the hazard is thereby increased, so also the resulting duty. Knapp v. N. P. Ry. Co. 139 Minn. 338, 166 N. W. 409. The increase of danger, with its exaction of proportionate care, caused by impaired visibility is expressly recognized by the traffic code. L. 1937, c. 464, § 28(h) (3 Mason Minn. St. 1938 Supp. § 2720-178[h]). Anyway, plaintiff's forward vision was not so impeded, nor its field so restricted, as to excuse him from the duty of care, always that of the driver of an automobile,

to know when, in daylight, he is approaching a plainly visible highway crossing.

The failure of plaintiff's faculties to warn him of this one is rationally explained only upon the hypothesis of his utter failure to use them. That is lack of due care as matter of law. It is conduct less excusable by reason than that of one who professes to have looked for, but failed to see, a danger so imminent that real attention could not have failed to discern it. Illustrative is Chandler v. Buchanan, 173 Minn. 31, 216 N. W. 254. See also DeHaan v. Wolff, 178 Minn. 426, 227 N. W. 350.

There are many cases holding that a motorist may be excused by circumstances from seeing, in time to avoid collision, the approach of another vehicle. Such a case is Overly v. Troy Launderers & Cleaners, Inc. 196 Minn. 413, 265 N. W. 268. But no case has been cited justifying, or permitting a jury to excuse, the driver who in daylight gets himself onto a broad, open crossroad without even knowing such a road was there.

The argument for plaintiff misconceives what is meant in the law of negligence by the phrase "distracting circumstances." No court has attempted to give an exclusive definition, and we make no such attempt. But it is clear that there must be not only another danger from which attention may be diverted, but also that the circumstances relied upon as distracting must be such as of themselves may reasonably be considered to portend danger. City of Radford v. Calhoun, 165 Va. 24, 181 S. E. 345, 100 A. L. R. 1378; Carbone v. Boston & Me. R. 89 N. H. 12, 192 A. 858; 3 Blashfield, Cyc. of Auto. Law and Practice (Perm. ed.) § 1748. Road conditions were held in Haffke v. Missouri Pacific R. Corp. 110 Neb. 125, 193 N. W. 257, not to be an agency of distraction so as to excuse the plaintiff from his failure to perceive the approaching train. Children, particularly if at play close to the highway, frequently make a situation which as much as any may demand the attention of the oncoming motorist and so divert his attention from another danger. Ordinarily distracting circumstances will be found to consist of an object moving or movable which in and of itself threatens, or reasonably may be thought to threaten, danger. Certainly the row of trees to plain-

tiff's left cannot be put in the category of distracting circumstances inasmuch as they could not be considered to constitute a menace.

Such things as "roughness of the road and darkness of the night" make special demands upon the attention of a chauffeur. But they can "hardly be called distracting circumstances that will excuse" what otherwise is negligence. Haleen v. St. Paul City Ry. Co. 141 Minn. 289, 290, 170 N. W. 207, 208.

It follows that contributory negligence here appears as matter of law. The judgment under review must therefore be reversed with directions to enter judgment for defendant.

So ordered.

GALLAGHER, CHIEF JUSTICE (dissenting).

It seems to me that the evidence in this case presents a question of fact as to plaintiff's contributory negligence. Defendant's gross negligence is conceded. Its counsel in appellant's brief say:

"Waiving analyses of other cases and all technicalities aside, candid and dispassionate consideration of this record shows simply that both plaintiff and defendant were grossly negligent."

The collision in question occurred at the intersection of two country highways. The cars must have reached the intersection at approximately the same time for they collided within its boundaries. In such event, plaintiff had the statutory right of way. 3 Mason Minn. St. 1938 Supp. § 2720-196. He was a stranger in the community and not familiar with the crossroads. While it is true that he passed the intersection about two hours before, it was from the opposite direction. The day was misty and foggy. The windshield wiper kept the shield clear, but it was necessary for plaintiff to keep the glass in the front doors transparent by the use of his hand. The road on which plaintiff was traveling was covered with loose gravel. The condition on each side of the highway may best be described by quoting from plaintiff's testimony:

Q. "Tell the jury as you went along what you saw as you got near when it finally turned out this intersection was. Tell us about everything there.

A. "On the south side of the road there was a row of trees planted clear up to the intersection. The ground shoots from the roots of the trees were growing up, and there were high weeds in between the trees. On the north side there were weeds along the roadside and also from the intersection, and north along the fence there were high weeds.

Q. "How high would you say those weeds and that obstruction were on either side?

A. "About five feet.

Q. "About five feet?

A. "Yes, sir.

Q. "So that as you came along there will you tell the jury whether you did or did not see any intersection?

A. "I did not see any intersection.

Q. "And will you tell us whether or not there was anything about the ground there just before the intersection?

A. "What do you mean?

Q. "That interfered with your view of the intersection?

A. "Well, the ground, the side of the road was so that I could not see the intersection until I was right in it.

Q. "So that until you actually got up to the point where you were entering the intersection did you know anything about that at all?

A. "No.

Mr. Field: "Objected to as leading and suggestive. Just a minute, Rev. Dreyer, and let the court rule on these things.

The Court: "He may answer."

To which ruling of the court the defendant, by its counsel, then and there duly excepted.

Mr. Dell: "What was your answer?

A. "No.

Q. "And when you entered the intersection where were you traveling in the road?

A. "In the center of the road.

Q. "Why were you traveling there?

A. "Because of the loose gravel on the sides."

Under the circumstances related and in the light of our former decisions, I do not see how we can hold, as a matter of law, that plaintiff was guilty of contributory negligence.

If a party is not entitled to a directed verdict on a trial, he is not entitled to judgment *non obstante*. Ritko v. Grove, 102 Minn. 312, 316, 113 N. W. 629; Koski v. C. M. & St. P. Ry. Co. 116 Minn. 137, 133 N. W. 790; O'Halloran v. C. B. & Q. R. Co. 156 Minn. 471, 195 N. W. 144. A verdict may be directed only in those unequivocal cases where it clearly appears to the court, on the trial, that it would be its manifest duty to set aside a contrary verdict as not justified by the evidence or as contrary to the law applicable to the case. 6 Dunnell, Minn. Dig. (2 ed. & Supps.) § 9764; Dawson v. Helmes, 30 Minn. 107, 14 N. W. 462; Baxter v. Brandenburg, 137 Minn. 259, 163 N. W. 516; Thompson v. Peterson, 122 Minn. 228, 142 N. W. 307.

A motion for a directed verdict admits for the purposes of the motion the credibility of the evidence for the adverse party and every inference which may fairly be drawn from such evidence. 6 Dunnell, Minn. Dig. (2 ed. & Supps.) § 9764; Stauff v. Bingenheimer, 94 Minn. 309, 102 N. W. 694; Knudson v. G. N. Ry. Co. 114 Minn. 244, 130 N. W. 994. On such motion the evidence must be viewed in its aspects most favorable to the verdict. Timmerman v. Marsh, 199 Minn. 376, 271 N. W. 697.

In determining that negligence or contributory negligence exists as a matter of law, courts frequently overlook the essential nature of negligence. It is the doing of something which an ordinarily prudent person would not do, or the failure to do something which an ordinarily prudent person would do, under like or similar circumstances. 4 Dunnell, Minn. Dig. (2 ed.) § 6969, and cases cited in footnote 70. The test, therefore, is not what an exceptionally careful driver would do or what a reckless driver would do or what a learned jurist would do. The test is what an ordinarily prudent person would do in the situation presented. Who, then, is in a

better position to know what an ordinarily prudent person would do under circumstances such as those here involved than 12 jurors selected from different walks of life in the unit of government where the case is tried. It seems to me, therefore, that a jury whose members have had an opportunity in the everyday affairs of life to witness the acts of prudent, as well as of imprudent, persons is best qualified to decide what a prudent person would do under given circumstances.

For the reasons stated, I dissent.

ON MOTION BY APPELLANT TO SUBJECT INSURANCE COMPANY AND RESPONDENT'S ATTORNEYS TO COSTS INCURRED IN SUPREME COURT.

On June 23, 1939, the following opinion was filed:

PER CURIAM.

The appellant has moved this court for an order adjudging that costs and disbursements in this court which have been taxed and allowed at $430.63 be assessed against the Home Insurance Company of New York, a corporation, and Roger L. Dell and Chester C. Rosengren, the attorneys who appeared for the plaintiff in this action. The theory of the appellant is that the insurance company and the lawyers were the real parties in interest and by assignment had become the owners of the entire cause of action upon which they sought recovery in the name of Dreyer. This contention is based upon the fact that Dreyer carried collision insurance on his car and that prior to the commencement of the action he settled with the insurance company for the damage to the car for the sum of $365.30 for which he gave a subrogation receipt whereby, to the extent of the payment, he subrogated the insurance company to any rights he might have against any persons liable for the loss. It also appears to be uncontradicted that the policy of insurance was what is known as a Fifty Dollar Deductible Policy which indemnified the plaintiff against loss by damage to the automobile over and above the sum of $50, which the plaintiff was to bear. The plaintiff later brought this suit to recover not only for damage to his property but for personal injuries to himself. He recovered a

verdict of $675 which a few days later he assigned, subject to the insurance company's rights, to Dell and Rosengren in furtherance of their lien for their contingent fee and, being indebted to them on other accounts, he assigned all of his interest in the verdict and any judgment rendered thereon, "with the understanding that any amount ultimately recovered in said proceedings be applied upon the indebtedness due and owing by assignor to assignees."

■ No motion or application was made to the court under 2 Mason Minn. St. 1927, § 9176, by the insurance company for permission to proceed in the name of this plaintiff, doubtless for the quite obvious reason that the insurance company was subrogated to but a part of plaintiff's cause of action. Certainly at this point and up to the time when the verdict was recovered, Dreyer was the real party in interest, subject only to the rights to which the insurance company was subrogated, Solberg v. Minneapolis Willys-Knight Co. 177 Minn. 10, 224 N. W. 271, and upon no theory, even if it be assumed that we have jurisdiction of the insurance company, could it be held that it, as assignee, would be liable for costs. 15 C. J. p. 100, § 192.

■ Dell and Rosengren take the position that the assignment to them was merely as security for the indebtedness which Dreyer owed them, and we are in accord with their contention in this regard. It purported to satisfy their claims only to the extent that recovery might be had upon the verdict. Our attention has not been called to, nor have we found, any statute in this state subjecting an assignee to costs; and where, as here, the assignment was merely in furtherance of the attorneys' lien and as security for other indebtedness, we do not think the assignee should be subjected to costs. In such circumstances an assignee is not held liable for costs in those states where statutes impose liability upon ordinary assignees. Davis & Schenck v. Higgins, 92 N. C. 203; Peck v. Yorks, 75 N. Y. 421; and see De Witt v. Perkins, 25 Wis. 438, 441.

Appellant's motion is denied.

MR. JUSTICE HILTON, incapacitated by illness, took no part.