ANDERSON *v.* THE E. B. WARD, JR.

*(Circuit Court E. D. Louisiana.* February 15, 1889.)

1. SHIPPING—LIABILITY OF VESSEL FOR TORT—ADMIRALTY—JURISDICTION.
   Where a steam-ship is given the key-berth in a wharf previously occupied by another, and the latter is moored outside, with no means of communication with the wharf other than across the deck of the inner vessel, negligence in permitting the deck of the inner vessel to be in a condition unsafe for passing over it to the outside vessel is a marine tort, within the jurisdiction of the admiralty courts.

2. SAME—CONTRIBUTORY NEGLIGENCE.
   The hatchway of a fruit vessel occupying the key-berth in a wharf, and having another vessel moored outside, was open in the night, according to custom, but had a coaming of about 12 inches, and was lighted by a lamp from the mast at one end. The deck was well lighted by electric lights on shore, and had across it from the gangway a clear passage way of 5 feet, over which was a lamp. Libelant, while intoxicated, and attempting to cross the deck to the outside vessel, to which he belonged, fell into the hatchway, and was injured. *Held*, that he was guilty of contributory negligence.

In Admiralty. Libel for damages. On appeal from district court.

Libel by Peter Anderson against the steam-ship E. B. Ward, Jr., for damages for negligence. Decree for claimant, and libelant appeals.

*H. H. Bryan* and *A. C. Lewis*, for appellant.

*J. W. Gurley, Jr.*, for appellee.

PARDEE, J. On the 16th day of May, 1887, the steam-ship E. B. Ward, Jr., loaded with fruit, came into the port of New Orleans, and moored at the fruit wharf at the foot of Calliope street. The place just before was occupied by the steam-ship Marmion, also engaged in the fruit trade, which, being unloaded, was moved out, the Ward was given the key-berth, and the Marmion was moored just outside and to the Ward.

Under these circumstances, the only method of passing from the steamship Marmion to the wharf was across the deck of the steam-ship Ward. The unloading of the Ward was commenced, and it was followed up until about half after 10 o'clock at night, when three-quarters of the cargo were unloaded, and the workmen quit for the day. The libelant, a mariner on board the Marmion, with five companions, left the Marmion about 6 or 7 o'clock, and went ashore, across the Ward. He returned with one Carperson, about 11 o'clock at night. Carperson climbed up on the Ward, went across in safety, and without trouble. The libelant, following him, fell into an open hatchway, and received serious injuries. He was taken up unconscious, and carried to the Charity hospital, where, after treatment about eight days, he was discharged. He brings a libel against the steam-ship Ward to recover damages for his injuries, which he charges were solely due to the gross and culpable negligence, and want of care, on the part of the officers and crew of said steam-ship Ward, in that they left open the hatchway, and had no guard-light, or any sign or indication that the said hatchway was open; and he alleges the night was dark, and it was impossible for any one to know that the hatchway was open. To this libel the claimants filed an exception to the jurisdiction of the court, on the ground that the libel set forth no admiralty or maritime cause of action; that libelant had no contract or connection with the said vessel of any nature whatever; that the alleged accident occurred in port, and not at any place, time, or in any manner which could give jurisdiction in admiralty to hear and determine any claim made in consequence or growing out of the alleged accident. This exception was overruled by the district court, and thereupon the claimant answered, denying all negligence,—alleging that the proper and sufficient lights were kept on the Ward, showing this open hatch; that the hatchway was plainly visible, and there was ample room to pass over the vessel without obstruction; and that all usual and necessary precautions were taken by the officers and crew of the said steamer E. B. Ward, Jr. The answer also alleged carelessness and reckless behavior on the part of the libelant, and reiterated the same plea to the jurisdiction as contained in the overruled exception.

The claimant's argument on the exception is that, as the Ward was moored to the wharf, and the Marmion moored to the Ward outside, and that, as there were no business relations between the Marmion and the Ward, that, as to the officers and crew of the Marmion, the Ward was a mere extension of the wharf, and that no maritime obligations existed on the part of the Ward to furnish safe passage to the crew of the Marmion between that ship and the shore. The case is very similar to that of *Leathers* v. *Blessing*, 105 U. S. 626, where it was held:

"Jurisdiction in admiralty is not ousted by the fact that when the wrong was done on the vessel by the negligence of her master she had completed her voyage, and was securely moored at the wharf where her cargo was about to be discharged. The fact that she was securely moored to the wharf, and had communication with the shore by a gang-plank, did not make her a part of the land, or deprive her of the character of a water-borne vessel."

When the Ward took the key-berth, previously occupied by the Marmion, and the Marmion was moored outside, with no other means of communication with the wharf than across the decks of the Ward, according to custom, and necessarily, the master of the Ward permitted and invited the officers and crew of the Marmion to go to and from the shore across the decks of the Ward. Under these circumstances, the relation of the master and of his owners to the libelant was such as to create a duty on them to see that the libelant was not injured by the negligence of the master. On the facts made by the libel there was a breach of that duty, and by the negligence of the master such breach constituted a maritime tort, of which the district court had jurisdiction. The exception to the jurisdiction was properly overruled.

The evidence submitted in the case shows that the practice and custom on vessels loaded with fruit are to keep the hatches open at all times when the weather will permit, in order that no damage shall result to the fruit, and that, in accordance therewith, the hatchway on the Ward was left open and uncovered at the time of the accident to libelant. The evidence also shows that the hatchway had a coaming of about 12 inches, and was lighted by a lamp hanging from the mast at one end of the hatchway; that there was a clear passage-way of 5 feet from the gangway across the deck of the Ward; that the deck of the Ward was well lighted with the electric lights, which stood near by on the shore, (so much so that during the progress of unloading the quality of fruit, as it came from the hold of the Ward, could be detected;) and that immediately over the passage-way, leading from the gangway of the Ward to the Marmion, a lamp was hung. The weight of the evidence is to the effect that the libelant, when he went aboard the Ward to cross over to the Marmion, was intoxicated; so much so, that he had to climb the gang-plank on his hands and knees, and that his walk, when on the Ward, was irregular and uncertain. Under this evidence it is difficult to find that the master or owners of the Ward were guilty of any negligence leading to the accident complained of; but it is unnecessary to go particularly into the matter, because, under the evidence, the libelant contributed by his own carelessness and negligence to the injury he received. This was the view taken of the case by the district court, whose decree will be affirmed. Let the decree be entered.