Hillsborough, Jan. 7, 1941. } No. 3196.

LLOYD DOWLING *v.* L. H. SHATTUCK, INC.

*Chretien & Craig (Mr. Craig* orally), for the plaintiff.

*Sheehan & Phinney (Mr. Phinney* orally), for the defendant.

WOODBURY, J. The defendant does not contend that its motions

for a nonsuit and for a directed verdict should have been granted because of conclusive evidence of either the plaintiff's contributory negligence or of his assumption of the risk. Its sole contention is that the record contains no competent evidence that it was in any way negligent. The validity of this contention depends upon the admissibility of the testimony of two witnesses called by the plaintiff who were permitted by the court, over the defendant's objection and subject to its exception, to testify as experts. The substance of their testimony was that the shoring was improperly designed and that the material provided by the defendant for its construction was both insufficient in amount and inadequate in strength.

The admissibility of opinion evidence, under the liberal rule in force in this state, does not depend upon the nature of the issue upon which that evidence bears, (*Davis* v. *Railroad*, 75 N. H. 467; *Higgins* v. *Carroll*, 86 N. H. 312; *Goldstein* v. *Corporation*, 86 N. H. 402) but upon whether or not, in the sound discretion of the presiding justice, evidence of that nature will probably aid the jury in their search for the truth. *Carbone* v. *Railroad*, 89 N. H. 12, 20 and cases cited. The question of whether a witness offered as an expert may testify as such is also one addressed to the sound discretion of the court below. It is whether or not the witness, by either study or experience (*Ricard* v. *Insurance Co.*, 87 N. H. 31), has knowledge on the subject-matter of his testimony so superior to that of men in general concerning it that his views will probably assist the triers of fact. *Emery* v. *Company*, 89 N. H. 165, 169; *Ford* v. *Ford*, 89 N. H. 292, 297, and cases cited; *Weiss* v. *Wasserman*, *ante*, 164.

Counsel for the defendant admit that the proper method of shoring a ditch is a fit subject for the testimony of experts, but contend that the witnesses offered by the plaintiff as experts and permitted by the court to testify as such were not qualified.

With respect to the first of these witnesses they point out that he was a fellow-laborer with the plaintiff in the ditch, that he had never had any engineering education (in fact he was illiterate), that he had worked only once before under conditions similar to those encountered in the ditch where the cave-in occurred, and that his experience in working upon shoring before the present job, where he was in direct charge of that operation, had only been as one of several helpers under the supervision of a foreman. These considerations affect the weight to be given to the testimony of this witness but they do not go to the fundamental question which is whether his knowledge of shoring was sufficiently superior to the

knowledge on the subject of persons in general to make his views of value to the jury. His testimony that he had had five years experience in working upon shoring in various places, sometimes under conditions substantially similar to those encountered at Hampton, provides an amply sufficient basis for the court's ruling that he was qualified to speak as one having expert knowledge.

The defendant admits that the plaintiff's second witness was qualified to speak as an expert on shoring ditches, but contends that his testimony should have been stricken from the record, first, because he had never constructed shoring in ditches dug in beach sand, as was the one in which the plaintiff was injured, second, because he based his opinion that the defendant's method of shoring was defective only upon a comparison between it and the safest possible method, and, third, because the shoring method said by him to be proper, he later admitted to be the method, standard, as far as he knew, only in the city of Manchester.

The defendant's first ground for objection to the testimony of this witness is met by his testimony that he had more than once supervised the shoring of ditches dug in "running sand" similar to beach sand even though he had never actually worked at a beach. The second ground for objection is met by the testimony of this witness that the method said by him to be the safest was also "the proper and only way to do it." The third ground is also without merit. The question is not what method of construction conforms to general standards of safety but what method is reasonably safe. *Frear* v. *Company*, 83 N. H. 64. If the method said by the witness to be the "safest, the proper and only way to do it," is shown to be standard in but one locality the force of the witness' testimony may be affected, but his competency as an expert is not. The defendant's further argument that the testimony of this witness may have induced the jury to apply a higher standard of care to the defendant's acts than that imposed by the law comes to nothing because the court instructed the jury in his charge as to the proper legal standard to be applied by them.

From this it follows that there is in the record competent evidence that the defendant failed in his non-delegable duty to provide the plaintiff with a reasonably safe place in which to work. *Maltais* v. *Concord*, 86 N. H. 211. In consequence the defendant's motions for a nonsuit and for a directed verdict were properly denied.

The defendant objected and excepted to the use by one of the plaintiff's expert witnesses of photographs taken of the ditch after

the cave-in, which were exhibits in the case, as a basis for certain conclusions which he drew as to the inadequacy of the shoring. Obviously the photographs showed the size of the timbers used and the number of them, and the fact that an outside brace said by him to be essential for reasonable safety was not used. The record discloses that these are the only uses made of the photographs by the expert. We are unable to see any error in his so using them.

The shoring of the ditch consisted of two rows of planks driven down vertically along each side of the ditch. They were held apart by a system of transverse braces. The cave-in occurred when a large stone in the middle of the ditch was removed thereby permitting another large stone, beside and resting against it and also under the vertical planks, to fall inward into the ditch. The movement of this second stone permitted sand to flow in behind it through the aperture which it left below the shoring thus weakening an entire section of it so that it fell over. It appeared that the upright planks all along the ditch had been driven into place to the point of refusal with a fourteen pound sledge hammer and that those which were over the stone which rolled into the ditch had been driven as far as possible onto it.

The plaintiff introduced evidence that an instrument known as a maul, which weighed seventy-five to ninety pounds, and was operated by a crew of three men, was ordinarily used to drive shoring planks and that it would drive them deeper than a sledge. To this evidence the defendant objected on the ground that a finding of its liability could not be predicated upon a finding that a maul instead of a sledge hammer should have been used. Its objection was overruled and it excepted.

This exception is without merit. There was evidence that some of the upright planks in the section of shoring which collapsed had not been driven to the bottom of the excavation and that this condition rendered that part of it unsafe. The reason given for this was that if shoring planks are not driven to full depth and if, upon disturbance at one point, sand should start to flow into the ditch, its flow would spread laterally along the bottom of the ditch below the shoring thereby undermining a large section of it, whereas if all shoring planks are driven home, disturbance at one point, such as was occasioned by the removal of the stone, would have permitted only a little sand to flow into the ditch thereby localizing the cave-in to but one small place.

From the foregoing the jury could have found that although the

planks were driven, as they should have been, directly onto the stone, and that a maul would have been no more effective for that purpose than the sledge hammer which was used, still the cause of the cave-in which engulfed the plaintiff was the failure to drive home the planks beside the stone, and that these planks, although driven to refusal with the sledge, should have been and could have been driven to proper depth with a maul since that tool has greater driving power.

Thus the evidence concerning the maul is admissible. This result is not changed by the testimony of one of the plaintiff's experts to the effect that in his opinion failure to use a maul made no difference, because, in the face of the other evidence, his opinion could be disregarded.

The rulings of the court permitting one of the plumbers who worked in the ditch to testify that some of the planks in the part of it which did not collapse were not driven down to the bottom of the excavation, and to testify that he complained of this condition to the workman in charge of shoring operations were not erroneous. The evidence that all along the ditch there were planks which had not been driven to full depth has some tendency to prove that some of the planks in the part of the ditch which caved in had not been properly driven down. The question is one of remoteness for the discretion of the presiding justice. *Howson* v. *Company*, 87 N. H. 200, 208; *Hackett* v. *Railroad*, 89 N. H. 514, 519. The evidence that this witness complained of the condition of the shoring was properly admitted. While proof of an employer's breach of duty to provide a safe working place for his employees does not require evidence that the employer had actual knowledge that the work-place provided by him was unsafe, evidence that he had such knowledge is admissible since it tends to indicate a need for investigation and repair, and knowledge of such defects by an employee charged with the duty of maintaining a safe work-place is the knowledge of the employer. *Carbone* v. *Railroad*, 89 N. H. 12, 15, and cases cited.

In his argument to the jury counsel for the plaintiff said "Assuming, Gentlemen,—assuming that this man was not in that accident, his earning capacity then would not have been decreased, would it, for a period of one and a half years,—assuming he had no other accident after that?" At this point counsel for the defendant objected, his objection was overruled and he excepted, and counsel for the plaintiff continued: "—or one year and three months. He was getting $20 a week. Now assuming that he had worked and got $20 a week from the time of the accident, his loss of wages was nearly

$1300,—assuming that he had worked after the accident and got $20 a week with a good earning capacity." Counsel for the defendant again objected "as an improper element of damages; no evidence to support it," but his objection was overruled and he excepted.

In so far as the argument constituted an example in arithmetic to show the jury how to compute damages the argument was properly allowed (*Roussin* v. *Blood*, 90 N. H. 391), but counsel for the defendant contends that it is improper because there is in the record no evidence that the plaintiff could have found employment at twenty dollars per week, or if he could have found it that he would have worked at it, during the time he was incapacitated by his injuries.

What the plaintiff would or could have done had he not been injured cannot be the subject of direct and positive testimony. It must be inferred from evidence concerning the plaintiff's character and capacity for work and his ability to find it before he was injured, considered in the light of economic and other pertinent conditions thereafter. Upon the evidence to be considered hereafter of the plaintiff's employment at and before the time of his injury it was not going too far for counsel to urge upon the jury that he would have continued to earn, had he not been injured, what he was able to earn before that time. It was for the jury to say whether or not it was more probable than not that he would have done so and to assess damages accordingly.

Counsel for the plaintiff also argued, over the objection and subject to the exception of counsel for the defendant, that the plaintiff was "totally disabled" during the year and a quarter following his injury. In view of the evidence of the seriousness of the plaintiff's injury and of the evidence that for many months thereafter he suffered pain when he walked or otherwise exerted himself, and in view of the lack of evidence that he was fitted by education, training or natural ability to do anything but manual labor (see *Duhaime* v. *Insurance Co.*, 86 N. H. 307, 309), we cannot say that counsel overstepped the bounds of legitimate advocacy in characterizing the plaintiff's condition as one of total disability.

The defendant excepted to the refusal of the court to grant its requests for instructions as follows:

"22. There is no evidence that work was available for Mr. Dowling after July 4, 1937. In the absence of evidence showing that Mr. Dowling had a job available by which he could have earned money between July 5, 1937, and September 8, 1938, you may not include

loss of wages for that period even though Mr. Dowling was physically disabled.

23. If you find Mr. Dowling is entitled to a verdict, his damage as a result of loss of wages is limited to the period from the date of the accident, June 11, 1937, to the date the project closed, July 4, 1938." September 8, 1938, was the date upon which the plaintiff resumed work after his injury.

These requests are based upon the proposition that there may be no recovery for loss of wages unless there is in the record concrete evidence that the plaintiff, if he had not been injured, both would and could have worked during the period of his disability. No cases have been cited to us and we know of none which support this proposition. Dearth of authority on this point is not surprising because it is obvious that the hypothetical question of what employment a plaintiff would have had if he had not been injured cannot be the subject of concrete testimony. As appears above, the amount of work the plaintiff would have been willing to do and what opportunities for employment would have been available to him during the period of his disability had he not been injured can be determined only by drawing inferences from his past history of employment and by considering prevalent economic conditions during the time his disability lasted.

The evidence in the case at bar is that the plaintiff had worked as a stage hand until ten or twelve years before his injury. Then, when such employment ceased to be available, he obtained employment in a textile mill at twenty-two dollars per week. After that mill closed in 1935 he had no regular employment but had worked with only brief interruptions as a laborer for various employers until he went to work for the Shattuck Company "sometime in May" 1937 for a wage of twenty dollars per week. From this evidence of practically continuous past employment as a laborer the jury might properly infer that the plaintiff, had he not been injured, would have been willing to work with similar diligence in the same capacity during the period of his disability. From it they might also infer the probable amount of his weekly wages but on this question they may also use their own knowledge. *Moran* v. *Railway*, 74 N. H. 500. As to the opportunities for employment as a laborer during the period of the plaintiff's disability the jury may also use their own knowledge. They, in common with men in general, have knowledge of the availability of employment at manual labor during that period in the vicinity of the plaintiff's and their own homes and direct testimony

on that subject could afford them no material aid. The requests were properly denied.

The defendant contends, however, that even though its requests were not accurate statements of the law, still they were sufficient under the doctrine of *Burke* v. *Railroad*, 82 N. H. 350, to impose upon the court a duty to give more full and complete instructions than he did upon the point suggested by them, in short, that the exception to the failure to charge as requested permits the raising at this time of the question of the sufficiency of the instructions given. This contention is without merit. The case cited is not an authority for the proposition argued.

That case holds that the duties of court and counsel with respect to instructions to the jury are reciprocal and that a request to charge, even though erroneous, upon a point which the requesting party is entitled to have considered imposes a duty upon the presiding justice to charge upon that point. It specifically does not overrule the cases which hold that no valid exception lies to the refusal of the court to grant an erroneous request for instruction. In the *Burke* case (p. 362), the court with respect to cases of this latter sort, was careful to say: "In our cases holding that an exception to a refusal to give a requested and incorrect instruction must be overruled . . . the judges gave other instructions upon the subject, or it does not appear that they did not do so. That is, it does not appear in any of them that the judge failed to perform the duty whereto he was moved. He instructed upon the subject presented. The exceptions were overruled because the moving party's requests were erroneous and his presentation of the subject was not ignored by the court. If he desires to question the correctness of instructions given under such circumstances, he should except thereto, as in the case of instructions given entirely on the court's initiative."

In the case at bar the Presiding Justice did not ignore the question of damages for loss of capacity to earn. He told the jury that one of the elements of damage which the plaintiff might recover, if he could recover at all, was the "wages lost by reason of the injury." This instruction so far as it went, was correct. In actions of tort for personal injuries damages are recoverable for loss of capacity to earn (*Sanders* v. *Railroad*, 77 N. H. 381), and, in cases similar to the one at bar in which it appears that the plaintiff suffered a total loss of capacity to earn extending over a period of time, his loss of capacity is to be measured by the amount of the wages which he would have earned during the period of his disability had he not

been injured. If counsel for the defendant thought that a more full and complete explanation to the jury of this element of damage was necessary he should have excepted to the charge as given and thus permitted the correction of the alleged error at the time when it was made. His exception to the refusal of the court to grant his requests, which in reality were motions to withdraw an issue from the jury, directed the court's attention to the sufficiency of the evidence to warrant any substantial recovery at all for loss of earning capacity, not to the adequacy of what was said upon that element of damage. The remarks of this court in *Carr* v. *Orrill*, 86 N. H. 226, 229, are in point. It is there said, citing the *Burke* case, that "the reciprocal duties of court and counsel . . . demand that counsel be held to be satisfied if they do not protest the instruction as insufficient. An error of trial correctible upon its commission is ordinarily waived if the offended party does not then use reasonable diligence in seeking the correction. Thereby fairness in avoidance of a new trial is secured without impairment of the fairness of the trial had."

The verdict in this case is large, but we cannot say that it is excessive as a matter of law. The plaintiff's medical and hospital bills amounted to over $900. The evidence discloses that for over an hour after the cave-in he stood in the ditch, partly on a broken leg, under a mass of sand and timbers while awaiting rescue, and that while there he suffered excruciating physical pain and great mental anguish borne of the fear that the ditch (it was eight to ten feet deep at that point), would cave in further and either crush or suffocate him. He was operated upon twice. At the second operation one fragment of bone was attached to the other by means of a metal pin. He was confined in a hospital for twelve weeks, for much of that time immovable in bed with tension applied to his broken leg by means of another metal pin driven through a bone in the heel, all of which was very painful. It also appeared that he suffered considerable pain after his discharge from the hospital and that his recovery, although good, would not be complete until months or even years after the trial. Considering the impossibility of measuring accurately the compensation to be awarded for mental and physical pain and suffering the order must be

*Judgment on the verdict.*

All concurred.