EILEEN E. DANE, *Adm'x v.* PRYDE E. MACGREGOR.

*Murchie & Murchie (Mr. Alexander Murchie* orally), for the plaintiff.

*Robert W. Upton* and *John E. Gormley (Mr. Gormley* orally), for the defendant.

JOHNSTON, J. The defendant testified that he first saw the decedent when he was 8 to 10 feet from him. The bridge was 20 feet long. Stott was carried to a point about 80 feet south of the bridge and the car stopped fifty feet beyond, going some 160 feet from the point of first vision. The headlights of the car satisfied the statutory requirement. The road was straight for a distance of 175 feet north of the bridge and 200 feet north of it the lights of a south-bound car would show straight ahead. The judgment of the defendant was that under the then prevailing conditions of a clear night and a dry road

surface he could have stopped in 65 to 90 feet at his estimated speed of 30 to 35 miles per hour.

The impact took place on the left front of the car between the fender and the hood. Shattered glass from the left headlight was found in the left lane near the north end of the bridge. The headlight itself became detached and lay off the highway to the east about 65 feet southerly of the glass. The body lay in the left lane with the feet nearer the bridge two and one half feet from the center line and the head a little over three feet from the easterly edge of the cement. One of Stott's shoes was found about 15 feet south of the bridge a little to the west of the center line of the highway.

It could be found that the defendant in the exercise of due care would have seen the decedent in time to take saving action, just as three other drivers had who testified. The fact that after the defendant did see the pedestrian, time was too short to avoid the collision is not decisive. If he should have been seen, the statute (R. L., c. 119, s. 22), requiring slowing down and giving timely signal, applied.

There was substantial evidence that Stott had been drinking. It cannot be said as a matter of law, however, that but for his drinking the accident would not have occurred. *Murphy* v. *Granz*, 91 N. H. 244, 245. He was seen to drink some beer and there was hard liquor at the party. There was evidence that he looked, talked and walked in a natural manner while at the hotel and that none of his faculties was impaired. A Mr. Deschaies, who was the last driver to pass, testified that Stott was walking south in the left lane facing traffic and walking straight and in a steady manner. He turned at the sound of the horn and motioned for a ride.

The decedent "had the right to rely on careful driving towards him." *McCarthy* v. *Souther*, 83 N. H. 29, 31. This was particularly true in the present case because he was being approached from the rear. It could be found that he had a right to assume that he would be seen and not be injured. This is not a case of another car approaching from the opposite direction and consequently temporarily blinding the defendant driver. *Murphy* v. *Granz, supra.* "How often safety would require one . . . to look behind him to protect himself would plainly depend upon all facts of the particular case; and the answer, being an inference to be drawn from facts proved, must be returned by the triers of fact." *Bourassa* v. *Railway*, 75 N. H. 359, 360. See also, *Burns* v. *Coté*, 86 N. H. 167. It is unnecessary to decide just where Stott was walking in the highway. There was no

sidewalk although there was a 3 foot strip of tarvia on each side of the 20 foot roadway of cement. "There is no specific legal prohibition against walking on the right-hand side of the road, and . . . a pedestrian is entitled to walk in any part of the highway he chooses if he does so with due regard for the rights of other travelers and exercises reasonable care for his own safety." *Stowe* v. *Hartford*, 91 N. H. 261, 264. The case was properly submitted to the jury.

During the cross-examination of one of his witnesses the defendant excepted to questions concerning prior statements to plaintiff's counsel. The objection was that the questions amounted to prejudicial testimony on the part of counsel. As the utterances inquired about were collateral facts, the examiner was bound by the denials of the witness. He did not claim otherwise. The examination was properly allowed. It is assumed that the Court found that counsel was acting in good faith. "There is therefore no objection, either of principle or policy, to such an attempt to prove the self-contradiction by the witness himself." 3 Wig. Ev. (3d *ed.*) s. 1023, *p.* 701. *Doyle* v. *Lacroix*, 85 N. H. 247. The ruling in *Carbone* v. *Railroad*, 89 N. H. 12 is not applicable. In that case a question was asked which in effect charged a party with preventing the production of a material witness, which question was unsupported by any evidence. It attacked the good faith of the other side and was clearly prejudicial. *Charles* v. *McPhee*, 92 N. H. 111. Nor is *Calley* v. *Railroad*, 93 N. H. 359 in point. A witness there was asked not about a former statement of his own but about a very material fact. There was no supporting evidence of the fact and no reasonable expectation that the witness would make it evidence.

Subject to exception, a witness for the plaintiff was allowed to testify to a statement of the decedent made the evening of April 24th before going to the Winnisquam House that he was going to leave early before the rest of the party because he was going fishing in the morning. This was admissible to show the state of mind of the decedent as an explanation of his leaving as he did. It had some bearing on the issue of intoxication. *American Employers Ins. Co.* v. *Wentworth*, 90 N. H. 112.

Early in the trial a photostatic copy of a diagram of the scene of the accident made by a state trooper immediately afterwards was introduced in evidence without exception as plaintiff's exhibit number 2. Later counsel for the defendant asked that the use of the diagram be limited and that it be not shown to the jury with the notation, "Glass from broken headlight where man was hit." The plaintiff

undertook to substantiate the note but the Court ordered the words deleted from the diagram and allowed the exhibit to be shown to the jury, saving an exception for the defendant. There is no error in allowing evidence to be seen by the jury. Later the defendant excepted to the plaintiff's proving that the diagram of which exhibit number 2 was a copy was prepared by the state trooper. This was a reasonable inference from the exhibit itself, which was signed with the officer's name, and testimony that had already been admitted. The defendant testified that he assisted the officer in getting notes for the making of the diagram, that it was a fair representation of the scene of the accident, that the car, body, headlight and glass were in the positions shown by the diagram and that he told the trooper where he struck Stott and where his car stopped.

During the course of the argument of counsel for the plaintiff, the defendant excepted to the assertion that a Mr. Frost testified that Mr. Stott was going toward the left hand lane. The affirmative answer of the witness to the question concerning the movement of the decedent, "From the right hand side to the left hand side?" was a sufficient basis for the argument.

The defendant excepted to the failure to give his request for instructions number one. In addition to the general instructions of due care on the part of the plaintiff's intestate, it specified reasonable care in walking in a safe place and in looking for and avoiding approaching vehicles. The Court charged generally and specified the duty of reasonable care on Mr. Stott's part "in walking as he did upon the highway" and in looking for approaching automobiles. Request number five that the defendant had the right to assume reasonable care on the part of Mr. Stott, was also sufficiently complied with by that portion of the charge as follows: "In the absence of notice to the contrary one person is justified in presuming that the other will act in accordance with the rights and duties of both." Defendant's request number four asked that the jury be told that the decedent had nothing to control but his own locomotion. In *Bellemare* v. *Ford*, *ante*, 38, 41 it was said that such an instruction was not necessary in the case of an aged, lame woman. Ordinarily it is not reversible error for the Trial Court in its discretion to refuse to so charge. Jurors know full well the different responsibilities of a pedestrian and a driver of a motor vehicle. Counsel may argue the difference and the Judge may charge it, when needed, but generally a new trial will not be ordered because of failure to give such an instruction. Insofar as *McCarthy* v. *Souther*, 83 N. H. 29, may be thought to require such an

instruction in every case where the conduct of a pedestrian is involved, it is overruled. The charge need not discuss all the specific items of evidence; it deals with issues and the rules of law necessary for their proper determination. What evidence need be pointed out for a proper understanding of the issues may ordinarily be left to the Trial Judge. "The extent to which rules of law shall be given specific application to the claims of the parties and the facts disclosed by the evidence in a given case must be left to the sound discretion of the trial court, provided the jury is 'fully and correctly' instructed." *Colby* v. *Lee*, 83 N. H. 303, 310.

*Judgment on the verdict.*

DUNCAN, J., did not sit: the others concurred.