**CANADIAN NATIONAL RAILWAY COMPANY, Defendant, Appellant,**

v.

**Agnes P. CONLEY, Administratrix of the Estate of Charles Everett Conley, Plaintiff, Appellee.**

**No. 4951.**

United States Court of Appeals First Circuit.

Oct. 14, 1955.

---

Stanley M. Brown, Manchester, N. H., with whom McLane, Carleton, Graf, Greene & Brown, Manchester, N. H., was on the brief, for appellant.

Stanton E. Tefft, Manchester, N. H., with whom Wyman, Starr, Booth, Wadleigh & Langdell, Manchester, N. H., was on brief, for appellant.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

This is an appeal by the defendant, Canadian National Railway Company, a Canadian corporation, from a judgment of the United States District Court for the District of New Hampshire for the plaintiff, a resident of New Hampshire, in the amount of $15,000 for damages arising out of the death of her husband. The jury's verdict had been in the amount of $30,000 but the plaintiff filed a remittitur for so much of the verdict as exceeded $15,000, the maximum amount allowable in an action for wrongful death under the New Hampshire statute. N.H.Rev.Laws, c. 355, Sec. 13 (1942) as amended.

The plaintiff's late husband, Charles Everett Conley, was first employed by the defendant railroad on June 19, 1916 and apparently remained in its employ except for slack times and periods when he was incapacitated due to illness or injury until the date of his death on May 10,

**454**

1952. On February 27, 1952 Conley became afflicted with pneumonia and was placed on sick leave. As was customary procedure with regard to the defendant's employees who had been on sick leave for more than thirty days, a notice was sent to Conley informing him of the necessity of a physical examination before returning to active duty. The plaintiff testified that Conley intended to travel to Montreal on May 13, 1952, for the examination. Conley, whose home was near the railroad's water division shop in Gorham, New Hampshire, on the morning of May 9, 1952 was seen by Michael Gately, a fitter and boss in the defendant's water division, first seated on the bumper of an automobile near the railroad station and later crossing the track toward the water division shop. A few minutes later Gately, who had gone for a tool, returned and observed Conley seated on a stone step outside the water division shop. Conley then asked Gately to get him a doctor. While waiting for the doctor Conley who was in a doubled up position stated that he had drunk from a bottle in the water division shop. Ten minutes later the doctor arrived and Conley was taken to the hospital where he died at three o'clock the next morning. The immediate cause of his death was extreme emphysema and edema of the lungs due to the caustic effect of sulphuric acid. It appears that the bottle from which Conley drank was about two-thirds full of sulphuric acid and was a green quart beer bottle with a Ballantine label on it. There were no labels or markings indicating that the bottle contained acid. This bottle had been filled earlier that morning by Gately with the acid and was used to charge the defendant's fire extinguishers and had been placed by him in a pail near two lunch boxes on a bench in the water division shop. Gately testified that he had used this particular beer bottle for the last three years and had been using beer bottles for this purpose for thirty-five years.

The defendant seeks reversal of the judgment below on three grounds and in the alternative requests that a new trial be granted because of an erroneous charge to the jury, the allowance of unfair and prejudicial arguments, certain rulings on the admission of evidence and the denial of defendant's motion to limit damages.

Defendant first contends that it did not violate any duty of care which it owed Conley and it was, therefore, not negligent as a matter of law. Even assuming that Conley was a licensee, defendant argues that its only duty as to such licensee was to warn him of known hidden dangers and here it did not have the opportunity to warn Conley because he entered the water division shop without the knowledge of the defendant. The defendant, however, confuses the essential distinction between a licensee and a trespasser. If it is assumed that Conley was a licensee, then it must be assumed that he was privileged to be on the defendant's property by reason of the defendant's consent. "A licensee is a person who is privileged to enter or remain upon land by virtue of the possessor's consent, whether given by invitation or permission." Restatement, Torts § 330 (1934). Consent to the licensee's presence on the land having been established it is inconsequential whether the possessor of the land had any knowledge of the licensee's presence on any particular occasion thereafter. When the dangerous condition arose it became incumbent upon the railroad to maintain a certain standard of care with respect to that danger toward all licensees. This standard of care requires that a reasonable warning be given to a licensee, such as Conley, that a dangerous condition exists, if such condition is not open to the licensee's observation. Smith v. Benson's Wild Animal Farm, 1954, 99 N.H. 243, 109 A.2d 39. The jury may well have found that under the circumstances here a reasonable man in Gately's position would have warned persons legally on the property that the beer bottle contained acid by means of a label affixed to the bottle denoting its poisonous contents, and that a reasonable man would not have relied on the possibility that

455

he could give a licensee an oral warning of the danger if he had the chance opportunity of seeing the licensee entering the water division shop where the beer bottle was located. We cannot say that as a matter of law, assuming Conley was privileged to be in the defendant's water division shop, that the defendant did not violate the limited duty of care which it owed to him " * * * to exercise reasonable care to disclose to him dangerous defects which are known to him (the possessor of land) and likely to be undiscovered by the licensee." Restatement, Torts § 343, Com. a., cited in Mitchell v. Legarsky, 1948, 95 N.H. 214, 216, 60 A.2d 136, 137.

The second ground for reversal contended by the defendant is that Conley was guilty of contributory negligence as a matter of law when he did not smell the contents of the beer bottle before drinking it. However, the fact that this acid was in a beer bottle which according to one witness had nothing on it which indicated that it did not contain beer and who further testified that the bottle had the same appearance and condition as a new one except for the possible lack of a cap, would place on Conley less of a duty to test the contents of the bottle than would be the case under other circumstances. We cannot say on the facts before us that Conley was negligent as a matter of law. See Hashim v. Chimiklis, 1941, 91 N.H. 456, 21 A.2d 166.

The third ground urged by the defendant for reversal of the judgment is that Conley was a trespasser as a matter of law and therefore was barred from recovery by the New Hampshire statute.[1] We reject this contention without extended discussion as there was adequate evidence presented here from which it could be inferred that Conley's status was not that of a trespasser. His long period of service with the defendant, his intention to return to active duty with the company and the acquiescence to his presence by Gately, were all factors tending to prove that Conley was permitted to be on the railroad premises even though he was on sick leave. The trial court was so impressed by these factors that it ruled as a matter of law that Conley was not a trespasser but a licensee. The defendant contends that if Conley was not a trespasser as a matter of law then at least it was a question for the jury as to his status. However, in view of the fact that the plaintiff's evidence as to the acceptance of Conley on the premises was uncontradicted, the defendant having chosen not to present any evidence at the trial, and the lack of any company rule barring employees in Conley's status from visiting premises such as the water division shop, the action of the trial judge in taking the question of Conley's status from the jury was not error.

The defendant further contends that the trial court's charge to the jury incorrectly stated the law in that it charged the defendant with a duty of ordinary care rather than the "limited" duty of care referred to in Cook v. 177 Granite St., 1949, 95 N.H. 397, 64 A.2d 327. However, the trial court used the term "duty of ordinary care" in defining negligence and properly said that negligence is the failure to do something which the ordinary man of average prudence would do under the same or similar circumstances and that while a person who does not use due care is negligent,

[1]. N.H.Rev.Laws, c. 442 (1942)
\* \* \*
"5. *Trespass on Railroad.* If any person shall without right enter upon or remain in any right of way, tracks, yard, station ground, bridge, depot or other building of any railroad, when notice has been posted forbidding such trespass, he shall be fined not more than twenty dollars; and no right to enter or be upon any railroad track shall be implied from custom or user, however long continued.

"6. *Effect of Trespass on Civil Rights.* If any person shall be injured while engaged in any act prohibited by the preceding section, neither he nor his executor or administrator shall have any cause of action against the railroad company for damages arising from such injury unless the injuries are occasioned by the wilful or gross negligence of the railroad or its employees."

the degree of care required in any particular instance varies in accordance with the circumstances and conditions that exist at the time. The defendant particularly objected to the trial court's statement that the defendant was charged with the duty to use ordinary care and was bound to take measures to see to it that no one on their premises was injured through any fault of the defendant, assuming the person was on the premises legally. However, when this language is viewed in the context of the entire charge and especially in the light of that portion of the charge defining what standard of conduct was owed to a licensee, such as Conley, by the defendant it is evident that the charge does not misstate the law. The jury was correctly instructed that a licensee should be given reasonable information as to existing dangerous conditions not open to his observation, of which the licensee knows or should know. This instruction correctly states the New Hampshire law. Hashim v. Chimiklis, supra. We hold that the trial court's charge did not expand the defendant's duty to warn of concealed dangers into a duty to make the premises safe.

The defendant's objections to the trial court's charging the jury on plaintiff's requested instructions Nos. 8 and 9 which related to the lack of company rules as to the handling of acid, and the lack of a warning label on the beer bottle, is unwarranted as the jury was not told that the defendant had a duty to formulate rules for handling acids or label the beer bottle but rather that if it found that the defendant should, in the exercise of due care, have issued such rules or labelled the bottle the failure to carry out these duties may constitute negligence.

█ The defendant claims that certain statements made by plaintiff's counsel were unfair and prejudicial. The objections based on statements relating to the defendant being a foreign corporation are without merit. However, during the course of the plaintiff's argument to the jury the statement that "he

(Conley) had been in this building hundreds of times" was made. Defendant's objection to this argument was denied. From the record it seems to be apparent that plaintiff's counsel was referring to Gately's testimony that he had seen Conley sitting outside the shop on a stone step a hundred times and thus the statement made to the jury might appear to be a highly prejudicial misquotation. But Gately further testified that he had let Conley drink beer inside the shop on one occasion and that Conley had the privilege of coming in the shop like any other employee and passing the time of day or staying a few moments or even eating lunch there on rainy days and that he had exercised that privilege. In view of the fact that Conley had been working for the railroad since 1916 and thus had many opportunities to be in the shop, it cannot be said as a matter of law that plaintiff's inference that Conley had been in the building hundreds of times was unwarranted. See Woodbridge v. Desrochers, 1944, 93 N.H. 87, 35 A.2d 802.

█ Objection was made by the defendant to the allowance of testimony by Roland Mahurin, Conley's stepson, that Conley had told him five or six weeks before the accident that Gately was in the habit of drinking beer at the defendant's shop. Plaintiff stated that this was for the purpose of showing Conley's state of mind and not for the purpose of proving that Gately drank beer on defendant's premises. Apparently it was the plaintiff's theory that whether or not Conley believed Gately drank beer in the shop would have some bearing as to whether Conley's actions in drinking from the beer bottle containing acid was contributory negligence or not. The trial court allowed this testimony relying on Dane v. MacGregor, 1947, 94 N.H. 294, 52 A.2d 290 which held that testimony as to the decedent's statements that he was going fishing were admissible to show his state of mind in leaving a dinner early. In the Dane case the decedent's state of mind had some bearing on whether or not he was intoxicated at the time of his

injury. This exception to the hearsay rule was discussed at some length in American Employers Ins. Co. v. Wentworth, 1939, 90 N.H. 112, 5 A.2d 265 and it is our conclusion that its application in the instant case was in accord with the principles laid down in that case. Conley's statement indicated that he thought Gately allowed beer drinking in the shop; this was certainly a declaration concerning Conley's mental state at the time the declaration was made.

Defendant objected to a series of questions asked by plaintiff's counsel which attempted to establish that a witness had made statements prior to the trial which were inconsistent with his testimony as a witness. It is clear, however, that the trial judge was aware that the previous statements must be inconsistent with the witness' present testimony in order to be admissible and he was careful to exclude any line of inquiry which could have possibly prejudiced the defendant in this regard.

■ At the close of evidence the defendant moved that damages under the New Hampshire statute [2] be limited to the tombstone bill, undertaker's bill and damages that flowed from the pain and suffering. The defendant contended that Conley would not have left an estate if he had lived as the plaintiff had testified that Conley's entire pay went toward current expenses leaving nothing for his estate. The defendant further contended that there was no evidence that Conley would make any future earnings and that, therefore, the loss of his earning capacity should not be considered by the jury. With regard to the latter point, however, defendant conceded that Conley's doctor testified that he "might live ten years at the proper job and not taking chances" and could be gainfully employed at "any sedentary work or supervisory work." Under these circumstances the denial of defendant's motion insofar as future earnings is concerned was not improper and did not result in prejudice to the defendant. Loss of earning capacity was properly an element to be considered by the jury in this case. Consequently, it was the function of the jury to determine what would have been Conley's earning capacity if he had lived. There was no necessity that the plaintiff offer concrete evidence of what Conley would and could have done had he lived. See Dowling v. L. H. Shattuck, Inc., 1941, 91 N.H. 234, 17 A.2d 529.

There undoubtedly was no evidence from which the jury could infer that Conley would have left an estate if he had lived, and if the trial court had refused to so instruct the jury, if it had been requested by the defendant, such refusal would have been in error. However the trial court's denial of defendant's general motion to limit damages to the tombstone and undertaking bills and pain and suffering was not incorrect in itself as there was some evidence that plaintiff was injured due to the loss of the decedent's capacity to earn. See Dowling v. L. H. Shattuck, Inc., supra, 91 N.H. at page 242, 17 A.2d at page 535. Moreover, it is difficult to see how the trial court's general explanation of what elements were to be taken into account in determining the value to be placed on the loss of earning capacity could have led the jury to attribute any value to the possibility that Conley would have left an estate, especially in view of plaintiff's counsel clearly expressed denial during

2. N.H.Rev.Laws, c. 355 (1942).

   "12. *Damages, Elements.* If the administrator of the deceased party is plaintiff, and the death of such party was caused by the injury complained of in the action, the mental and physical pain suffered by him in consequence of the injury, the reasonable expenses occasioned to his estate by the injury, the probable duration of his life but for the injury, and his capacity to earn money, may be considered as elements of damage in connection with other elements allowed by law."

3. Record Appendix to Brief for Appellant, p. 110.

   " * * * we haven't claimed, and don't now claim, that had Mr. Conley lived he would have accumulated an estate. It appears that it took all of his earnings to support himself and his wife. And de-

his argument to the jury of any claim that there would be such an estate.[3] There is no doubt that the better practice would have been for the trial court's charge to expressly exclude the possibility of an estate as a factor to be taken into account in determining the value of the loss of earning capacity but under the circumstances here the failure to do so could not have misled the jury.

[8] The defendant's exception to the trial court's charge on the ground that it charged the jury to consider as a separate element of damages the probable duration of decedent's life but for his injury is without merit as such charge merely repeated the words of the applicable statute. N.H.Rev.Laws, c. 355, § 12, supra.

The trial court's allowance of the filing of a remittitur was proper procedure in the instant case and the defendant's objection thereto is without merit. Arkansas Valley Land & Cattle Co. v. Mann, 1889, 130 U.S. 69, 9 S.Ct. 458, 32 L.Ed. 854.

Therefore, I am of the opinion that the judgment of the District Court should be affirmed.

MAGRUDER, Chief Judge (concurring in part).

[1-8] Though the case is obviously on the border line, I concur in the conclusions reached by Judge Hartigan (1) that the defendant was not entitled to a directed verdict, (2) that the trial judge committed no error in ruling that the status of Conley in the water division shop was that of a gratuitous licensee rather than a trespasser, and (3) that whether Conley was contributorily negligent presented an issue of fact for the jury. I also agree with Judge Hartigan that other alleged errors in rulings of the trial judge (with one exception about to be noted) presented no ground for; reversal.

However, I do think that the district court committed reversible error in its charge to the jury for not accurately differentiating between the duty which the railroad, as occupier of the premises, would owe to an invitee, or business visitor, in respect of a possibly dangerous condition on the premises, and the much lesser duty which the occupier owed to Conley as a gratuitous licensee. This distinction is made clear in Am.L.Inst., Rest. of Torts §§ 342, 343, and Comments thereto. I gather that the law of New Hampshire is no different in this respect. See Mitchell v. Legarsky, 1948, 95 N.H. 214, 216, 60 A.2d 136; Cook v. 177 Granite Street, Inc., 1949, 95 N.H. 397, 398, 64 A.2d 327.

Thus, in the case of a gratuitous licensee, who is present on the premises as a donee of a privilege rather than for a purpose directly or indirectly connected with business dealings between the licensee and the occupier, the railroad has no duty to prepare in advance a safe place for the reception of such licensee. Hence, as against the possibility that some gratuitous licensee might take a swig of sulphuric acid out of the beer bottle, it certainly could not have been found, as the district court permitted the jury to find, that the railroad "ought, in the exercise of due care, to have either made rules to govern the proper handling of acid or given suitable instructions to its employees with respect to such a matter". As stated in Rest. § 342, the railroad is subject to liability to gratuitous licensees only if it knows of the condition causing the harm, and "realizes"—not should realize in the exercise of due care, but subjectively realizes—that the condition involves an unreasonable risk to such licensees, and has reason to realize that such licensees, including Conley, would not discover the condition or realize the risk, and yet notwithstanding this invites or permits the licensees to enter or remain upon the premises, without exer-

spite his many years of work, when he got through, he had nothing left. So we would expect in the future as in the past

what he earned would go toward the support of himself and his widow."

cising care either to make the condition reasonably safe or to warn licensees of the condition and the risk involved therein.

In the case at bar it is of course clear that defendant's employee Gately actually knew of the condition, *i. e.*, he knew of the presence of the sulphuric acid in the beer bottle kept in the water division shop for a proper use and purpose. It was Gately's testimony that the same old beer bottle had been used for this purpose for three years and that the practice of using old beer bottles for such purpose had been one of long standing. Hence it might well have been that it had never occurred to Gately that this old practice and condition constituted any danger of bodily injury through unwitting imbibing of the sulphuric acid by a licensee like Conley who might upon occasion enter the shop. If so, the jury would have been warranted in finding that Gately, who represented the company in this instance, never subjectively realized that the presence of the acid in the old beer bottle constituted a condition involving an unreasonable risk to gratuitous licensees. In the absence of such realization, there would be no duty of care on the part of the occupier either to remove the dangerous condition or to warn prospective licensees of the condition and the risk involved therein. Yet the trial court told the jury that it was the duty of the railroad to give the licensee "reasonable information as to existing dangerous conditions, not open to his observation, of which the defendant knows *or should know*". (Italics added.)

On principle, I think the present case is not dissimilar to Higgins v. Mason, 1930, 255 N.Y. 104, 174 N.E. 77, 79, where the administratrix of a deceased gratuitous guest in an automobile was suing his host on account of bodily injuries and death suffered in an accident occurring while his host was driving the car. The plaintiff obtained a verdict and judgment in the trial court; but the court of appeals upheld a judgment by the appellate division reversing as a matter of law the judgment in plaintiff's favor and directing the dismissal of the complaint. It appeared that the accident was caused not by negligence of the host in the ordinary operation of the car but by the overturning of the car due to a mechanical defect in the steering mechanism. Referring to the New York authorities, the court of appeals pointed out that "the defendant host, George Mason, was not liable for the death of his guest, Robert Higgins, because of a mechanical defect in his car, although Mason, by inspection, might have discovered the fault, since Higgins, in accepting the invitation to ride, must have taken the car as he found it, and no duty of inspection rested upon Mason. Mason would be liable only if he knew of the dangerous condition; realized that it involved an unreasonable risk; believed that the guests would not discover the condition or realize the risk; and failed to warn them of the condition and the risk involved." There was testimony to the effect that the host knew that there was something wrong with the car but he did not know what, and he thought that they would be able to get home. This evidence, the court thought, was insufficient "to warrant the inference that there was actual knowledge on Mason's part that the car was in a dangerous condition, or actual realization that there was an unreasonable risk to his guests involved in a continuance of the journey. Even if Mason knew that something was wrong with the car, that it was 'logy' on hills, that it did not steer well, this was far from being realization of the fact that a serious mechanical defect, making further travel dangerous, was involved. Mason's own conduct in exposing his wife and himself to the peril of traveling farther in the car indicates that he was not conscious of the peril. If Mason thought the car safe for himself, he could not have realized that it was unsafe for his guests. * * * Therefore we think no obligation rested upon Mason to warn his guests of a peril involved in a continuance of the journey."

It follows, in my opinion, that the judgment for the plaintiff in the present case should be vacated and that the case should be remanded to the District Court for a new trial, with appropriate instructions as above indicated.

WOODBURY, Circuit Judge (concurring in part with Chief Judge MAGRUDER).

I am unable to persuade either of my colleagues to the view that the judgment below should be vacated and the case remanded with directions to enter a judgment for the defendant. In my opinion, if the decedent was not guilty of contributory negligence as a matter of law, at least as a matter of law the defendant was under no duty to warn him, as a gratuitous licensee, not to attempt to filch drinks out of any beer bottles he might run across in the course of his wanderings about the premises, particularly opened beer bottles discovered on a bench in a bucket with overalls, rags, and packages of soda in the water department shop, which, according to undisputed evidence, was not used either by the men who worked therein or by anyone else as a place of resort for the purpose of drinking beer.

[9] Since neither of my colleagues agrees with me in this, and since I agree with Chief Judge MAGRUDER that in any event the charge was erroneous in its definition of the duty owed a gratuitous licensee, I join with him to make a majority of the court in favor of vacating the judgment and remanding the case for a new trial with appropriate instructions.

The judgment of the District Court is vacated, the verdict is set aside, and the case is remanded to that court for further proceedings not inconsistent with the holdings of this court as disclosed in the foregoing opinions.