**Walter N. AHO, Plaintiff, Appellant,**

v.

**Christina JACOBSEN, Defendant, Appellee.**

**No. 5268.**

United States Court of Appeals First Circuit.

Nov. 22, 1957.

Rehearing Denied Dec. 9, 1957.

William H. Diamond, Boston, Mass., with whom Harry Kisloff, Boston, Mass., was on the brief, for appellant.

James A. Whipple, Boston, Mass., for appellee.

Before MAGRUDER, Chief Judge, and WOODBURY and HARTIGAN, Circuit Judges.

HARTIGAN, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the District of Massachusetts directing a verdict for the defendant shipowner in an action brought by the plaintiff for damages for personal injuries allegedly suffered because of the defendant's negligence.

The plaintiff at the time of his injury was a crew member of the fishing vessel John G. Murley and had been a fisherman of some ten years experience. On January 4, 1955 the John G. Murley was scheduled to leave the New Bedford harbor in the afternoon. The plaintiff testified that about 9 o'clock in the morning he put his bag on board the vessel and then returned to his home. It appears that at this time and also later on at 1 o'clock on the same day when plaintiff was injured, the John G. Murley was facing north and tied alongside the defendant's fishing vessel, the Christina J. The latter boat was alongside the pier. It was necessary in going from the pier to the John G. Murley to cross the deck of the Christina J. There was testimony that it was a customary practice for fishermen from the outside boats to cross over the inside boats in going back and forth from ship to pier. Plaintiff returned to the pier about 1 o'clock in the afternoon and attempted to board the defendant's vessel in order to cross to the John G. Murley. However, the rail of the Christina J., because of the lowness of the tide was now three feet below the top of the pier and there was

a space of two feet between the end of the pier and the side of the boat. Plaintiff seized a tackle rope on the Christina J. running from a block on the mast to another block attached to the rigging. Unfortunately, the end of this tackle rope was not secured to a cleat and as the plaintiff put his weight on it, it went slack and he fell upon the rail of the Christina J. and suffered fractures of the lower left leg. There was evidence that a ladder attached to the pier was blocked by the starboard gallows frame of the Christina J. and, therefore, was not available for use by the plaintiff. There was also evidence that it was customary to secure and make fast all tackle lines when fishing vessels were laying over in port.

The district court ruled that the plaintiff was a licensee to whom was owed only a duty to abstain from wilful, wanton or reckless misconduct, and there being no evidence of such misconduct on the part of the defendant, a verdict was directed for the defendant.

The plaintiff in this appeal contends that he had a maritime right to cross from the inboard boat in order to reach his boat and that the defendant had an affirmative duty to keep her boat in a reasonably safe condition for the plaintiff's passage. The plaintiff further contends that he was a business invitee, to whom was owed a duty of exercising due care.

We must treat the plaintiff's complaint alleging damages resulting from defendant's negligence as one involving a maritime tort. The plaintiff's right of recovery is rooted in federal maritime law. Pope & Talbot, Inc., v. Hawn, 1953, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143; Leathers v. Blessing, 1881, 105 U.S. 626, 26 L.Ed. 1192. Massachusetts law is, therefore, not controlling in this case.

Plaintiff contends that a seaman who is forced to cross an inboard vessel in order to reach a pier is owed a duty of reasonable care by the owner of the inboard vessel. There is language in Anderson v. The E. B. Ward, Jr., C.C.E.D. La.1889, 38 F. 44 to the effect that the master and owner of the inboard vessel owe a duty to members of the outboard vessel to see that they are not injured in crossing the inboard vessel because of the negligence of the master. In that case, however, the defendant's vessel took the inside berth previously occupied by the plaintiff's vessel and this was one of the circumstances which the court held created a duty of reasonable care. There was no evidence in the instant case that the Christina J. had taken an inboard position away from the John G. Murley and the cases are perhaps distinguishable on this ground. The decision in Lauchert v. American S. S. Co., D.C.W.D.N.Y.1946, 65 F.Supp. 703 does not seem to recognize this maritime right on the part of members of outboard vessels. It held that a member of the crew of an outboard vessel was as to the owner of an inboard vessel a mere licensee to whom was owed only a duty to refrain from wilfully injuring him or knowingly allowing him to run into danger.

In other recent cases involving maritime tort actions, alleging unsafe conditions aboard the shipowner's vessel, brought by persons other than the shipowner's employees or employees of independent contractors hired by the shipowner, it has been found necessary to determine whether the plaintiff was a licensee or invitee. This preliminary finding has been required in order to ascertain what standard of care is owed to the injured person. Thus in Kermarec v. Compagnie Generale Transatlantique, 2 Cir., 1957, 245 F.2d 175, it was held that a guest of a member of the defendant's crew was a mere licensee. See, also, Rodermond v. U. S., 3 Cir., 1950, 179 F.2d 955; Gunnarson v. Robert Jacob, Inc., 2 Cir., 1938, 94 F.2d 170, certiorari denied 1938, 303 U.S. 660, 58 S.Ct. 764, 82 L.Ed. 1119; Radoslovich v. Navigazione Libera Triestina, S.A., 2 Cir., 1934, 72 F.2d 367, and Zanone v. Oceanic Steam Navigation Co., 2 Cir., 1910, 177 F. 912. Although it has been suggested that there is a trend toward holding an owner of property to a single duty of reasonable care in all circum-

stances, see Kermarec v. Compagnie Generale Transatlantique, supra, 245 F.2d at page 180 (dissenting opinion), the general rule as stated by the court in that case at page 178 "is that the shipowner shall not wilfully or wantonly injure a licensee, or expose him to hidden perils or fail to use due care to prevent injury to him after discovering that he is in danger."

■ Prior to discussing whether the defendant here was guilty of wilful misconduct or failed to apprise the plaintiff of a hidden peril or neglected to use due care after discovering the licensee to be in danger, it is necessary to determine whether evidence was presented from which it could be found that plaintiff was a business invitee rather than a licensee. It is argued that plaintiff and defendant had a community of interest in that very possibly defendant's vessel might on occasion be in an outside position and it would be to the economic benefit of the owner for her crewmen to be able to cross the decks of the inboard boat. The extension of the status of business invitee to those who are on premises at a certain time for their own purposes and not for the purpose of having business dealings with the property owner has been widely accepted in certain circumstances. Usually, however, these cases concern premises open to the public such as shops where there is at least the present economic benefit to the owner of giving the invitee the opportunity of seeing and perhaps forming a desire for some of the wares on display. Renfro Drug v. Lewis, 149 Tex. 507, 235 S.W.2d 609, 23 A.L.R.2d 1114. In the instant case, plaintiff had no intent to do business with the defendant at any time in the future and, conversely, there is no indication that defendant could obtain any present or potential economic benefit from the plaintiff. The trial court was correct when it held that the plaintiff was a licensee as a matter of law.

■ The trial court also ruled correctly when it held that there was no evidence from which a jury could infer that the defendant had been guilty of wilful or wanton or reckless misconduct toward the plaintiff. However, in order to sustain the lower court's decision we must also find that from the evidence presented by the plaintiff a jury could not reasonably find that defendant had either exposed the plaintiff to a hidden peril or failed to use due care after discovering the licensee to be in danger. There is no evidence here that defendant failed to use due care after discovering the licensee to be in danger for there was no proof offered by the plaintiff that defendant was aware of the plaintiff's reliance on the slack tackle rope in boarding the Christina J. In Canadian National Railway Company v. Conley, 1 Cir., 1955, 226 F.2d 451, this court dealt with the exposure of a licensee to a hidden peril. While I disagreed with the majority of the court with regard to the law in New Hampshire concerning the exposure of a licensee to hidden perils, I agree that in states other than New Hampshire there has been a more general acceptance of the principle of law as stated in that case that the property owner is subject to liability to gratuitous licensees only if he knows of the condition causing the harm, and subjectively realizes that the condition involves an unreasonable risk to such licensees and has reason to realize that such licensees would not discover the condition or realize the risk and yet, notwithstanding this, invites or permits the licensees to enter or remain upon the premises, without exercising care either to make the condition reasonably safe or to warn licensees of the condition and the risk involved therein. There was no evidence presented here that the defendant or her agents or employees were aware of the existence of the slack rope or that it represented a danger to any licensees crossing the deck of defendant's vessel. The same can be said of the presence of the gallows frame in such a position as to prevent use of the ladder. Moreover, if it be conceded that the gallows frame had been interposed by the defendant so that it became an obstacle to the plaintiff's passage across the Christina J., its presence was cer-

tainly obvious to him. It could not be said to be an unsafe condition, which he could not be expected to be aware of unless warned by the defendant.

As the plaintiff has not presented evidence from which a jury could find that the defendant violated the limited standard of care which she owed to the plaintiff as a licensee, the decision of the district court in directing a verdict for the defendant was correct.

An order will be entered affirming the judgment of the district court.

MAGRUDER, Chief Judge (concurring).

The court's opinion is quite right in ruling that the applicable law in this case is federal maritime law, of which the Supreme Court of the United States is necessarily the ultimate expositor. Therefore, we need not be concerned with the Massachusetts cases, which seem to say that where an occupier merely permits a person to enter the premises for his own convenience, the occupier owes such person no duty other than a duty to refrain from intentional or willful and wanton injury. Cf. Murphy v. Boston & Maine R. R., 1924, 248 Mass. 78, 142 N.E. 782.

Since the general maritime law is being constantly enriched by common law analogies (see Jansson v. Swedish American Line, 1 Cir., 1950, 185 F.2d 212, 217, 30 A.L.R.2d 1385), it may be that the Supreme Court will adopt, as part of the general maritime law, the categories of trespasser, licensee, and business visitor, with differently defined duties with respect to each, as laid down in Am.L.Inst., Restatement of Torts § 329 et seq.

On the other hand, the Supreme Court conceivably might regard this approach as putting the cart before the horse. Instead of first determining plaintiff's status on the premises by reference to a few rather rigid categories, with the occupier's obligation predetermined once the plaintiff's status is settled, the Supreme Court might insist upon looking at the special facts of the particular case so as to fashion a duty on the occupier's part appropriate to the case. Thus, it is conceivable that the Supreme Court would say that, in the very unique fact situation presented in the case at bar, the owner of the Christina J owed to seamen crossing her decks to reach a contiguous vessel the same duty of care to furnish a reasonably safe place to work, including a reasonably safe mode of exit and ingress, as the owner of the Christina J owed to members of the crew of the latter vessel.

But I know of no Supreme Court decision pointing to the foregoing conclusion. In the absence of such controlling authority it seems to me that, having in view the customs of the trade, the most that could be inferred from the facts of the case at bar would be that the Christina J permitted her deck to be used as a convenient crossing place whereby persons could reach a contiguous vessel; that persons so crossing her deck were there for no purpose directly or indirectly serving the business interests of the Christina J; that the duty of the occupier in such a case could be no greater than a duty of care in the conduct of dangerous activities, and a duty of care to make known to such bare licensees any dangerous conditions of the premises of which the occupier is subjectively aware, and of which the occupier has reason to believe may not be discovered by the licensee himself. See Restatement of Torts §§ 341, 342.

Since there is no evidence from which it could be inferred that the defendant violated the duty so defined, I concur in the judgment of the court.